[No. 26386-2-I.   Division One.   June 8, 1992.]

THE STATE OF WASHINGTON, *Respondent*, v. ANTONIO
ALLEN HART, *Appellant*.

2

*Suzanne Lee Elliott* of *Washington Appellate Defender Association,* for appellant.

*Seth R. Dawson, Prosecuting Attorney,* and *Randall Yates, Deputy,* for respondent.

PEKELIS, J. — Antonio A. Hart appeals his conviction for possession of a controlled substance with intent to deliver. He contends that the trial court erred in denying his motion to suppress evidence which he asserts the police seized following an unlawful stop. We reverse.

I

On August 26, 1989, Detectives Manual Garcia and Fred Anderson of the Everett Police Department's Drug Abuse Reduction Team (DART) were patrolling a "high narcotics activity area" near several apartment complexes. At approximately 8:30 p.m., the detectives stopped to investigate a vehicle parked in the middle of the street with its engine running.

The detectives approached the vehicle and began speaking with its two juvenile occupants. While speaking with the juveniles, Detective Garcia observed an open container of alcohol inside the vehicle. One of the juveniles told Detective Garcia that "there was an individual selling marijuana" in a nearby apartment complex. The juvenile stated that the individual "was dressed in black and . . . was riding a motorcycle."

As the juvenile related this information to Detective Garcia, a person dressed in dark clothing (later identified as Hart) rode his motorcycle out of a nearby apartment complex in their direction. As Hart approached the area where the detectives were standing, the juvenile with whom Detective Garcia was speaking pointed to Hart and stated, "That's him."

Detective Garcia immediately stopped Hart and asked him for identification. In the course of the ensuing detention, Detective Anderson conducted a pat-down search for weapons. While removing a "hard object" from an inside pocket of Hart's jacket which he believed could have been a weapon, Detective Anderson saw a clear bag containing green vegetable matter protruding from another pocket which he suspected to be marijuana.

Hart was arrested and subsequently charged by information with possession of a controlled substance with intent to deliver in violation of the Uniform Controlled Substances Act, RCW 69.50.401(a). At a pretrial suppression hearing, Detective Garcia testified concerning the basis for his investigatory stop of Hart as follows:

Q: What specific information did you have that caused you to contact Mr. Hart as an individual?

A: Before I contacted Mr. Hart I was involved in a traffic stop with two minors that eventually had open container [sic] in their car. As I was talking to one, he stated through a brief conversation that there was an individual selling marijuana, an individual was dressed [sic] in black and was riding a motorcycle.

Q: Did he tell you anything about where that individual lived?

A: No.

Q: Did he tell you how he knew that that particular person was selling marijuana?

A: He knew of the person selling marijuana from the fact that he was going to score some, he said, some bud in the area, and he told that [Hart] was in the area riding his bike.

Q: Had he ever actually been approached by Mr. Hart to purchase marijuana?

A: He didn't specify that that evening, but he indicated he knew of [Hart] from perhaps — he didn't say when or if he had previous contacts.

Q: As you were talking to this individual, did you have his name . . .?

A: Not at that time, no.

Q: Did you get that individual's name while you were stopping Mr. Hart?

A: Yes, I did.

. . . .

Q: Did you have any other information that you obtained prior to stopping Mr. Hart?

A: No, I didn't.

Detective Garcia also testified that he did not include the informant's name in his police report because the informant had asked to remain anonymous out of fear that Hart would retaliate against him. He also acknowledged that neither the informant nor his companion was cited for the crime of minor in possession of alcohol. There was no evidence presented that either of them could be located again.

The trial court denied Hart's motion to suppress and entered the following written findings and conclusions:

The evidence found in the search is admissible as the result of a lawful *Terry* stop. Viewing the totality of the circumstances the officers had a reasonable suspicion based upon articulable facts to stop the defendant. The officers were in an area of high drug trafficking [*sic*], with information that the defendant was selling marijuana, had his physical description and a visual identification by the minor. It would have been unreasonable under the circumstances to require the police to look the other way.

After a stipulated trial, Hart was found guilty as charged. He appeals his conviction, contending that the trial court erred in denying his motion to suppress evidence.

## II

Hart argues that the trial court erred in determining that Detective Garcia's investigatory stop was reasonable under

the circumstances. According to Hart, the informant's tip to Detective Garcia that Hart was selling marijuana in a nearby apartment complex did not justify the detention.

■ The Fourth Amendment and Const. art. 1, § 7 are applicable to investigatory stops and require that such stops be reasonable. *Terry v. Ohio*, 392 U.S. 1, 16-19, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968); *State v. Lesnick*, 84 Wn.2d 940, 530 P.2d 243, *cert. denied*, 423 U.S. 891, 46 L. Ed. 2d 122, 96 S. Ct. 187 (1975). A police officer may conduct an investigative stop if the officer has a reasonable suspicion that there is a substantial possibility that criminal activity has occurred or is about to occur based on "specific and articulable facts" and the rational inferences from those facts. *State v. Kennedy*, 107 Wn.2d 1, 5-6, 726 P.2d 445 (1986); *see Terry*, 392 U.S. at 20-21.

■ An officer's reasonable suspicion may be based on information supplied by an informant. *Adams v. Williams*, 407 U.S. 143, 147, 32 L. Ed. 2d 612, 92 S. Ct. 1921 (1972); *Kennedy*, 107 Wn.2d at 7-8; *Lesnick*, 84 Wn.2d at 943. However, "[a]n informant's tip cannot constitutionally provide police with such a suspicion unless it possesses sufficient 'indicia of reliability.' " *State v. Sieler*, 95 Wn.2d 43, 47, 621 P.2d 1272 (1980) (quoting *Adams*, 407 U.S. at 147). Our Supreme Court stated in *Lesnick* that "[i]t is difficult to conceive of a tip more 'completely lacking in indicia of reliability' than one provided by a completely anonymous and unidentifiable informer, containing no more than a conclusionary assertion that a certain individual is engaged in criminal activity." 84 Wn.2d at 944 (quoting *State v. Lesnick*, 10 Wn. App. 281, 285, 518 P.2d 199 (1973), *aff'd*, 84 Wn.2d 940, 530 P.2d 243, *cert. denied*, 423 U.S. 891, 46 L. Ed. 2d 122, 96 S. Ct. 187 (1975)).

In *Sieler*, police officers received information provided by an unknown but named informant that criminal activity was occurring at a high school parking lot. 95 Wn.2d at 45. A school secretary telephoned police and stated that "a Mr. Tuntland" had called the school to report that he had observed what he believed to be a drug sale in a black-over-gold Dodge with a certain license number in the school

parking lot. *Sieler*, 95 Wn.2d at 44-45. No details of the transaction were given. *Sieler*, 95 Wn.2d at 45. Nevertheless, the officers proceeded to the scene and, without being able to corroborate any sign of criminal activity, detained the occupants of the vehicle matching the description given by the informant. *Sieler*, 95 Wn.2d at 45.

Our Supreme Court held that the investigatory detention constituted a violation of the Fourth Amendment. *Sieler*, 95 Wn.2d at 51. In reaching its decision, the court reaffirmed the rule adopted in *Lesnick*, which provided that "[1] absent circumstances suggesting the informant's reliability, or some corroborative observation which suggests either [2] the presence of criminal activity or [3] that the informer's information was obtained in a reliable fashion, a forcible stop based solely upon such information is not permissible." *Sieler*, 95 Wn.2d at 47 (quoting *Lesnick*, 84 Wn.2d at 944).

Because the *Lesnick* test is framed in the disjunctive, it could be read to mean that if the *informant* is reliable, that will suffice to justify a stop. However, the court in *Sieler* makes clear that the *Lesnick* test requires satisfaction of both prongs. The reliability of the informant him or herself merely satisfies the first prong. As the *Sieler* court stated, the reliability of the informant "*by itself* generally does not justify an investigatory detention." (Italics ours.) *Sieler*, 95 Wn.2d at 48. While the court recognized some authority to the contrary, *see* 3 W. LaFave, *Search and Seizure* § 9.3, at 100 (1978), it concluded that even if an informant is *reliable*, in the sense of being *credible*,

> the State generally should not be allowed to detain and question an individual based on a reliable informant's tip which is merely a bare conclusion unsupported by a sufficient factual basis which is disclosed to the police prior to the detention. . . . *[The factual basis] requirement helps prevent investigatory detentions made on the basis of a tip provided by an honest informant who misconstrued innocent conduct.*

(Footnote and citations omitted. Italics ours.) *Sieler*, 95 Wn.2d at 48.

Thus, the *Lesnick* test was reformulated by the *Sieler* court to provide that: An informant's tip possesses sufficient

"indicia of reliability" where (1) the *informant* is reliable *and* (2) the informant's *tip* contains enough objective facts to justify the pursuit and detention of the suspect *or* the noninnocuous details of the tip have been corroborated by the police thus suggesting that the information was obtained in a reliable fashion. *Sieler*, 95 Wn.2d at 48 & n.1; *accord, State v. Vandover*, 63 Wn. App. 754, 759-60, 822 P.2d 784 (1992) (investigatory stop resulting from informant's tip is not reasonable unless tip itself is shown to be reliable); *Campbell v. Department of Licensing*, 31 Wn. App. 833, 835-36, 644 P.2d 1219 (1982) (informant's tip does not justify investigatory stop unless reliability of informant's tip is demonstrated). *State v. Wakeley*, 29 Wn. App. 238, 241-42, 628 P.2d 835 (tip from reliable informant must contain objective facts sufficient to justify pursuit and detention of suspect), *review denied*, 95 Wn.2d 1032 (1981).

We therefore apply the 2-prong *Sieler* test to the facts before us. Addressing the first prong, we recognize that under the circumstances presented here, the informant could be deemed "reliable". Because the juvenile informant was being detained for a traffic infraction and possessed an open container of alcohol in the car, he was unlikely to make his situation worse by giving false information to the detectives. In addition, the informant here was not entirely anonymous.[1] Because he was being detained by Detective Garcia, he was, at least in some respect, "known to the police".[2]

As in *Sieler*, however, whether the informant here was sufficiently known to be deemed "reliable" is not critical.

---

[1] However, as the dissent in *Sieler* argues, one could well conclude that because the police had his name, Mr. Tuntland, the informant in that case, was not anonymous either. *See Sieler*, 95 Wn.2d at 53-54 (Dolliver, J., dissenting).

[2] On the other hand, despite the trial court's finding that the informant gave Detective Garcia his name *prior* to Hart's appearance, Detective Garcia testified that he did not learn the informant's name until after he had already detained Hart. This court is not bound by the findings of the trial court where, as here, constitutional rights are at issue. *See State v. Flowers*, 57 Wn. App. 636, 641, 789 P.2d 333 (citing *State v. Daugherty*, 94 Wn.2d 263, 269, 616 P.2d 649 (1980), *cert. denied*, 450 U.S. 958 (1981)), *review denied*, 115 Wn.2d 1009 (1990).

> Even assuming that an unknown but named telephone informant was adequately reliable, thereby distinguishing this case from *Lesnick*, this reliability by itself generally does not justify an investigatory detention. . . . Some underlying factual justification for the informant's conclusion must be revealed so that an assessment of the probable accuracy of the informant's conclusion can be made. It simply "makes no sense to require some 'indicia of reliability' that the informer is personally reliable but nothing at all concerning the source of his information . . .".

(Footnote and citations omitted.) *Sieler*, 95 Wn.2d at 48 (quoting 3 W. LaFave, *Search and Seizure* § 9.3, at 100 (1978)).

Hence, even if the first prong of the *Sieler* test were satisfied here based on circumstances tending to demonstrate the *informant's* reliability, the second prong of the test, *i.e.*, a showing of the *tip's* reliability, must also be satisfied. This is done either by demonstrating that the informant's tip contains enough objective facts to justify the pursuit and detention of the suspect or by corroboration of the tip's noninnocuous details by the police. *Sieler*, 95 Wn.2d at 48. Neither was satisfied here.

As was true in *Sieler*, Detective Garcia made a "commendable but unsuccessful attempt" to obtain a foundation for the informant's tip prior to confronting Hart. *See Sieler*, 95 Wn.2d at 49. Detective Garcia testified that the informant did not provide any basis for his supposition that Hart was selling marijuana except that the informant, who admitted he was looking to purchase marijuana, was told that Hart was "in the area riding his bike." Detective Garcia testified further that the informant did not tell him where Hart lived or indicate whether he himself had ever been approached by Hart to purchase marijuana. Detective Garcia therefore could not assess whether Hart was in fact selling marijuana or whether the informant may have misconstrued innocent conduct. Because the informant's tip lacked *any* objective facts to justify Hart's detention, the first alternative of the second prong was not met.

█ Because the informant's tip contained no factual basis for detaining Hart, sufficient indicia of the tip's reliability

existed only if the second alternative were met by the detectives' corroboration of the presence of criminal activity. *See Sieler*, 95 Wn.2d at 48 & n.1. However, the State presented no evidence that the detectives observed any "noninnocuous" conduct which tended to demonstrate that the informant's information was obtained in a reliable fashion. Hart's presence in an area where drug transactions were known to occur could not by itself give rise to a reasonable suspicion that he was engaged in criminal activity. *See Sieler*, 95 Wn.2d at 49 (citing *Brown v. Texas*, 443 U.S. 47, 52, 61 L. Ed. 2d 357, 99 S. Ct. 2637 (1979)); *State v. Ellwood*, 52 Wn. App. 70, 74, 757 P.2d 547 (1988).

Moreover, Detective Garcia's observation of Hart, which conformed to the informant's description of Hart and his location, did not, by itself, satisfy the corroboration aspect of the second prong of the *Sieler* test.

As our Supreme Court has stated:

Corroboration of public or innocuous facts only shows that the informer has some familiarity with the suspect's affairs. Such corroboration only justifies an inference that the informer has some knowledge of the suspect and his activities, not that criminal activity is occurring.

*State v. Jackson*, 102 Wn.2d 432, 438, 688 P.2d 136 (1984); *accord*, *Sieler*, 95 Wn.2d at 49-50 (police observation of vehicle which confirms the informant's description does not constitute sufficient corroboration indicating that informant obtained information in reliable fashion); *Lesnick*, 84 Wn.2d at 943 (anonymous informant's accurate description of defendant's vehicle "not such corroboration or indicia of reliability as to make [detention] reasonable"). *But cf. State v. Conner*, 58 Wn. App. 90, 96-97, 791 P.2d 261 (informant's specific, detailed description of suspect, time that alleged crime occurred, and identification of victim suggests that information that a crime had been committed was obtained in reliable fashion), *review denied*, 115 Wn.2d 1020 (1990).

We thus conclude that the State failed to satisfy the second prong of the *Sieler* test. Hence, the detectives lacked reasonable suspicion for their investigatory stop of Hart,

and the evidence seized pursuant to that stop should have been suppressed. Accordingly, Hart's conviction is reversed.

BAKER and KENNEDY, JJ., concur.