[No. 26258-1-I.   Division One.   July 27, 1992.]

THE STATE OF WASHINGTON, *Respondent,* v. ROBERT LEWIS WALKER, *Appellant.*

*Mary Jane Ferguson* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Donna L. Wise, Senior Appellate Attorney,* for respondent.

BAKER, J. — Robert Lewis Walker appeals his second degree burglary conviction, contending that (1) the investigatory stop was illegal because the police lacked a reasonable articulable suspicion of criminal activity; and (2) the subsequent frisk was illegal because the police had no grounds for believing that he was armed and presently dangerous. We reverse.

## FACTS

Seattle Police Sergeant Tyrone Sheffey was on patrol on a Sunday afternoon when a radio dispatcher reported two individuals going door-to-door asking for people who did not live in the area. The report described the two individuals by race, gender, and clothing. Sergeant Sheffey proceeded to the area and observed the defendant, who matched the general description given.

Sergeant Sheffey testified that when this individual noticed him, he appeared startled and turned abruptly onto a dead-end street to avoid the officer. The sergeant approached the man, who stopped on request, and explained that he was investigating a report of suspicious activity in the neighborhood. The defendant told the officer that he was going door-to-door looking for an apartment to rent.

Sergeant Sheffey testified that he started to frisk the outside of the defendant's pockets and then stopped to ask the defendant if he had any sharp objects on him:

> I then started to pat him down basically for, oh, my own safety to see if he have [*sic*] any weapons on him.
> And I remember at that time asking him, "Before I start patting you down, do you have any sharp objects on you?"
> He stuck his hand in his pocket and said, "The only thing I have is this knife."

When the defendant pulled the knife out of his pocket, he also pulled out several pieces of women's jewelry.

The sergeant testified that he asked the defendant about sharp objects because he was concerned about the possibility of being stuck with a needle and contracting a disease. When asked why he frisked the defendant, the sergeant responded, "For officer's safety, to see if he had any type of weapons on him or anything like that." The sergeant also indicated that he was concerned for his safety because he was alone in an isolated area.

Officer Kennedy also responded to the dispatch. He recalled the report stating two suspicious individuals were going door-to-door asking about places to rent in a location where no "for rent" signs were posted. Officer Kennedy testified that the dispatch did not identify the informant. He did not know what time the dispatcher had received the information. Although the officer assumed that the call had come from someone living in the neighborhood where the suspicious activity was reported, he did not know specifically where the call originated. In his report of the incident, the officer did identify the informant, but testified at the suppression hearing that he believed he had obtained the informant's identity later from another officer.

The court denied defendant's motion to suppress the evidence, concluding that the State had the requisite reasonable suspicion to conduct an investigatory stop and frisk. Pursuant to CrR 3.5(c) and CrR 3.6, the trial court entered findings of fact and conclusions of law. Following a jury trial, the defendant was found guilty of second degree burglary.

## I
### INVESTIGATORY STOP

■ In reviewing a trial court's decision following a suppression hearing, the findings of the trial court are of great significance. *See, e.g., State v. Mennegar*, 114 Wn.2d 304, 787 P.2d 1347 (1990); *State v. Daugherty*, 94 Wn.2d 263, 616 P.2d 649 (1980), *cert. denied*, 450 U.S. 958 (1981); *State v. Rogers*, 44 Wn. App. 510, 722 P.2d 1349 (1986). However,

the constitutional rights at issue require an appellate court to make an independent evaluation of the record. *Mennegar*, 114 Wn.2d at 310.[1]

■ Police may conduct an investigatory stop if the officer has a reasonable and articulable suspicion that the individual is involved in criminal activity. *State v. Sieler*, 95 Wn.2d 43, 46, 621 P.2d 1272 (1980). A reasonable suspicion is the "substantial possibility that criminal conduct has occurred or is about to occur." *State v. Kennedy*, 107 Wn.2d 1, 6, 726 P.2d 445 (1986).

An officer's suspicion of criminal activity must be based on facts that are objective, specific, and articulable. Utter, *Survey of Washington Search and Seizure Law: 1988 Update*, 11 U. Puget Sound L. Rev. 411 § 4.6(a), at 515 (1987-1988); *State v. DeArman*, 54 Wn. App. 621, 774 P.2d 1247 (1989). "The reasonableness of the officer's suspicion is determined by the totality of the circumstances known to the officer at the inception of the stop." *State v. Rowe*, 63 Wn. App. 750, 753, 822 P.2d 290 (1991). The court considers the officer's knowledge and experience in determining the validity of an investigatory stop. *State v. Glover*, 116 Wn.2d 509, 806 P.2d 760 (1991).

■ A reasonable suspicion justifying an investigatory stop may be based on an informant's tip if the tip possesses sufficient indicia of reliability, *i.e.*, if (1) the circumstances suggest the informant's reliability; and (2) there is some corroborative observation suggesting the presence of criminal activity or that the information was obtained in a reliable manner. *State v. Hart*, 66 Wn. App. 1, 830 P.2d 696

---

[1]Where findings of fact are insufficient to permit meaningful appellate review, an appellate court may remand to the trial court for more specific findings. *State v. Barber*, 118 Wn.2d 335, 823 P.2d 1068 (1992). In *Barber*, the Supreme Court remanded for a factual determination of whether an investigatory stop was based on legally permissible reasons or on perceived racial incongruity between the suspects and the location of the stop. Here, the investigatory stop was initiated in response to reported suspicious activity involving a "black male and a black female"; however, there is no suggestion that race or perceived racial incongruity aroused the initial suspicion. Therefore, the issue here is not whether the stop was based on legally impermissible grounds but rather whether the facts articulated were legally sufficient.

(1992). *Kennedy*, 107 Wn.2d at 7; *State v. Lesnick*, 84 Wn.2d 940, 530 P.2d 243, *cert. denied*, 423 U.S. 891 (1975); *Sieler*, 95 Wn.2d at 47.

In *Kennedy*, the police received a tip from an informant who had previously provided reliable information. This tip was corroborated by complaints from neighbors regarding drug activity at a certain residence and by the officer's subsequent observation of the defendant's conduct, which was consistent with drug activity. The Supreme Court held that these factors, combined with the officer's extensive experience in drug trafficking, constituted sufficient reasonable suspicion justifying an investigatory stop of the defendant's vehicle. *Kennedy*, 107 Wn.2d at 8.

In *Sieler*, a school secretary received information from a parent that a drug transaction may have taken place in a vehicle parked in the school parking lot. *Sieler*, 95 Wn.2d at 44-45. The secretary called the police and reported the incident. The radio dispatch indicated that a drug transaction may have occurred in a certain make of car and the license plate number was given. No other details were provided. On his way to the school, the officer radioed for additional information regarding the manner in which the information was obtained and the identity of the informant. *Sieler*, 95 Wn.2d at 45. The officer was told that a Mr. Tuntland had concluded that a drug transaction had occurred but that he was unavailable.

The court held that the officer lacked the requisite reasonable suspicion to conduct an investigatory stop of the occupants of the vehicle because the officer had no information about the informant except his name and only had a description of the vehicle. *Sieler*, 95 Wn.2d at 50. In addition, when the police arrived, the vice-principal told them he had just spoken with the occupants of the car and had observed nothing unusual. The court concluded as follows:

> Given the informant's uncertain trustworthiness, the absence of any facts known to the police supporting his allegation, and the unusual circumstance that his allegation was in effect challenged by a presumably very reliable person who had an excellent opportunity to view the defendants immediately before the

officers' arrival, the police simply could not have formed a well founded suspicion of criminal activity by the defendants.

*Sieler*, 95 Wn.2d at 50.

In *State v. Conner*, 58 Wn. App. 90, 791 P.2d 261, *review denied*, 115 Wn.2d 1020 (1990), the police received a report from a Budget Rent-a-Car employee that an individual had stolen the wallet of a co-worker. The informant told the police that the suspect was being detained at a nearby sales lot and provided a specific and detailed description of the suspect.

In considering whether the tip possessed adequate indicia of reliability, this court noted that "it might initially appear that the factor concerning reliability of the informant is not satisfied, because the facts are so similar to those in *Sieler*, concerning a telephone informant." *Conner*, 58 Wn. App. at 96. We distinguished *Sieler*, however, on grounds that *Sieler* involved a report of suspicious activity, whereas the Budget employee reported a specific crime.[2] In addition, the court found that the amount of detail given suggested that the information was obtained in a reliable fashion, *i.e.*, from the victim himself. *Conner*, 58 Wn. App. at 97.

█ In this case, the tip lacked sufficient indicia of reliability to justify an investigatory stop. First, the trustworthiness of the informant was unknown. The radio broadcast did not indicate the identity of the informant, the time of the report, where the call originated, or the basis of the informant's information.[3] The dispatch merely stated that there had been a report of two suspicious individuals going door-to-door, and included a general description of the individuals.[4]

---

[2]The report of suspicious activity in *Sieler* was that the informant observed what he believed to be a drug sale in a parked vehicle in the school parking lot.

[3]In its findings of fact, the trial court stated that the information was provided by an identified citizen informant. However, the identity of the informant was not known to the officers at the time of the stop.

[4]Even if the officers were aware of the informant's identity at the time they detained the appellant, they did not have any factual basis for believing that the information was reliable. As the court stated in *Sieler*, "[t]he reliability of an anonymous telephone informant is not significantly different from the reliability of a named but unknown telephone informant." *Sieler*, 95 Wn.2d at 48.

■ In addition, the tip lacked other indicia of reliability. The only corroborative observation made by the officer was that the defendant appeared startled when he saw the officer and attempted to evade him by turning onto a dead-end street. Flight from, or an obvious attempt to avoid police officers may be considered along with other factors in determining whether the officer possessed a reasonable suspicion of criminal activity. *State v. Little*, 116 Wn.2d 488, 806 P.2d 749 (1991); *State v. Glover*, 116 Wn.2d 509, 806 P.2d 760 (1991). However, flight alone is not enough, *see Little*, 116 Wn.2d at 504 (Utter, J., dissenting), and merely turning aside to avoid directly meeting an officer is certainly insufficient by itself to provide a necessary basis for a *Terry* stop. Here, the appellant stopped when approached by the officer and was cooperative, unlike *Little*, where the suspects fled on foot.

■ Finally, the police made no corroborative observations suggesting that the information was obtained in a reliable manner. There is no indication that the informant had personal knowledge of the reported activity or otherwise obtained the information in a reliable manner. *See, e.g., State v. Hart*, 66 Wn. App. 1, 830 P.2d 696 (1992). Given the informant's unknown trustworthiness, the absence of observations corroborating the tip, and the vagueness of the tip itself, we hold that the informant's tip lacked sufficient indicia of reliability to provide the police with the requisite reasonable suspicion to justify the investigatory stop.

## II
### FRISK

Even if the stop were justifiable, it would not automatically render a subsequent search reasonable under article 1, section 7 of the Washington Constitution and the Fourth Amendment. *Kennedy*, 107 Wn.2d at 9.

■ The police may conduct a limited search for weapons during an investigatory stop in order to protect themselves from physical harm. *Terry v. Ohio*, 392 U.S. 1, 30, 20 L. Ed. 2d 889, 911, 88 S. Ct. 1868, 1884 (1968). However, a frisk may be conducted only if the officer reasonably believes that

the suspect may be armed and presently dangerous to the officer or others. *State v. Smith*, 102 Wn.2d 449, 452, 688 P.2d 146 (1984). Under this standard, the officer must articulate specific facts from which he or she reasonably inferred that a particular suspect was armed and dangerous. *Smith*, 102 Wn.2d at 452; *State v. Williams*, 102 Wn.2d 733, 689 P.2d 1065 (1984); *State v. Broadnax*, 98 Wn.2d 289, 294, 654 P.2d 96 (1982); *State v. Hobart*, 94 Wn.2d 437, 441, 617 P.2d 429 (1980); *State v. Sweet*, 44 Wn. App. 226, 234, 721 P.2d 560, *review denied*, 107 Wn.2d 1001 (1986). "A 'generalized suspicion' is insufficient to justify a frisk." *Sweet*, 44 Wn. App. at 234.

In *Williams*, the Supreme Court found that the pat-down search of a suspect was not warranted because

> [t]he police did not and could not articulate a reason for believing that petitioner was dangerous. He made no furtive gestures or violent responses. He did not threaten the police nor did the facts of the alleged crime justify assuming that the suspect was armed or likely to harm the police. The facts simply do not support an inference that petitioner was dangerous.

*Williams*, 102 Wn.2d at 740.

In contrast, in *Sweet* this court held that a frisk was justified on the following grounds: the suspect was observed in an isolated area at night; he ignored police requests to stop and fled at the approach of the officers; he wore clothing that could have concealed weapons on his person (a leather jacket); he possessed items associated with burglaries and crimes of violence (a ski mask and dark work gloves); and his movements and gestures in response to the officers' presence were suspicious. *Sweet*, 44 Wn. App. at 235.

In this case, Sergeant Sheffey testified that he frisked the appellant because he was concerned for his safety. When asked why, the sergeant responded that he was concerned because he was alone in an isolated area. However, Officer Kennedy was present when Sergeant Sheffey began the pat-down search.

When the facts support an officer's safety concerns, a frisk for weapons is justified. However, this frisk occurred on a residential sidewalk in the middle of the afternoon. Appel-

lant was clad in a T-shirt and was alone in the presence of two police officers.

■ Sergeant Sheffey failed to articulate any specific facts which led him to believe the appellant was armed and dangerous, *e.g.*, that appellant ignored requests to stop, fled at the officer's approach, made furtive gestures or threats, that the facts of the suspected crime justified assuming the suspect was armed and dangerous, or that the suspect's clothing was such that weapons could easily have been concealed. Therefore, even if the initial detention was justified, the pat-down search was illegal and appellant's motion to suppress the evidence should have been granted.

Reversed and remanded.

PEKELIS and KENNEDY, JJ., concur.