IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| STATE OF WASHINGTON, | No. 86178-6-I |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| DOMINIC ANTONIO ENGLAND, | |
| Appellant. | |

BOWMAN, J. — A jury convicted Dominic Antonio England of unlawful possession of payment instruments. England appeals, arguing that the trial court erred by denying his motion to suppress evidence because he was unlawfully seized and by admitting evidence of his prior convictions for financial crimes in violation of ER 404(b). We reverse and remand for a new trial.

FACTS

On September 20, 2020, a Holiday Inn employee reported to the Puyallup Police Department that a person was trespassing in the hotel parking lot. Officer Nathan Jendrick responded and found a man sleeping in a car. The car was running, and there was a beer can outside the driver's side door. Officer Jendrick approached the car and tried to wake the man, but he was unresponsive. Suspecting the man may be in physical control of the car while impaired, Officer Jendrick called Officer Benjamin Timbs to investigate.

While Officer Jendrick waited for Officer Timbs to arrive, he looked through the car windows with his flashlight. Officer Jendrick "noticed some

notebook paper and . . . what appeared to be credit card numbers sitting on the back[ ]seat." The papers had 16-digit numbers, broken into four sets of 4 numbers, like those on a credit card. They also listed what appeared to Officer Jendrick to be expiration dates.

When Officer Timbs arrived, he woke the man, and the officers identified him as England. While Officer Timbs administered field sobriety tests, Officer Jendrick conducted a records check and found England had an outstanding felony warrant. Officer Jendrick also learned that England had prior identity theft and "fraud-related criminal convictions." When Officer Timbs finished his investigation, he told Officer Jendrick that he was not going to arrest England for physical control of a vehicle while impaired.

Based on the warrant and the possible fraudulent credit card numbers, Officer Jendrick continued to detain England at his patrol car. Officer Jendrick read England his *Miranda*[1] rights and asked about the papers in the back seat of the car. At first, England denied knowing about the papers. But England agreed that Officer Jendrick could get the documents from the car to show him. After Officer Jendrick showed England the papers, England explained that he borrowed them from a friend and did not know what they meant.

Officer Jendrick arrested England for the outstanding warrant. During a search of England's wallet, officers found a credit card and a debit card that did not belong to him and two EBT[2] cards without cardholder names. The State

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[2] Electronic benefits transfer.

charged England with one count of second degree identity theft, one count of possessing stolen property in the second degree, one count of resisting arrest,[3] and one count of unlawful possession of payment instruments.

Before trial, England moved to suppress the documents with the alleged credit card numbers that Officer Jendrick obtained in the search of the car. He argued that Officer Jendrick did not have reasonable suspicion to detain him to investigate the documents, vitiating his consent to search the car. The trial court denied England's motion.[4]

After the suppression hearing, the State dismissed the identity theft and possession of stolen property charges.[5] England then pleaded guilty to the count of resisting arrest. The parties proceeded to a jury trial on the count of unlawful possession of payment instruments.

Before trial, the State notified England that it intended to offer several of his prior convictions for financial crimes to show intent in the current charge under ER 404(b). The State sought to admit a January 29, 2014 conviction for identity theft in the second degree. In that case, officers found England in possession of another person's debit card, Social Security card, and driver's license. And the State sought to admit a December 10, 2015 conviction for two

---

[3] The State charged England with resisting arrest because he tried to run when Officer Jendrick arrested him.

[4] The trial court did, however, suppress a notebook Officer Jendrick found in the car that contained another person's phone number, birth date, Social Security number, driver's license number, "phone code," bank personal identification number, bank code-word, and what looked like a credit card number. The court concluded England consented to the search of only the loose documents visible in the back seat of the car, not the contents of the notebook.

[5] Both counts related to the information discovered in the notebook.

counts of attempted forgery, reduced from charges of identity theft in the second degree and unlawful possession of payment instruments. In that case, police found England in possession of three checks belonging to someone else.[6] The State argued that England's "prior convictions for identical crimes with identical requirements regarding intent show that [England] intended to use the fraudulent material for criminal activity." England objected, arguing that the prior convictions were merely propensity evidence and highly prejudicial.

The court found the prior convictions admissible under ER 404(b). It reasoned that because the State must show England possessed payment instruments with the intent to commit theft, forgery, or identify theft,[7] England's prior convictions were relevant and probative because they tended to show that intent. The court also concluded that any danger of unfair prejudice did not substantially outweigh the probative value of the evidence.[8]

At trial, the State called Greg Reiber, a financial crimes detective. Detective Reiber testified about his experience investigating fraud. He testified that two of the cards in England's wallet were inscribed with other people's names, but he could not match those names to any report of lost or stolen

---

[6] The State also identified a February 10, 2015 conviction for first degree identity theft and unlawful possession of payment instruments. But at the suppression hearing, the State did not offer this conviction, and the court did not rule on its admissibility.

[7] Under RCW 9A.56.320(2)(a)(ii), a person is guilty of unlawful possession of payment instruments if he possesses payment instruments "[i]n the name of a fictitious person or entity, or with a fictitious routing number or account number of a person or entity, with intent to use the payment instruments to commit theft, forgery, or identity theft.

[8] The State also sought to admit the prior convictions to rebut any argument of unwitting possession of the payment instruments. But the court rejected that argument because England said he did not intend to defend the charge on that basis.

property in Pierce County. Detective Reiber testified that the debit card had its account number scratched off or blacked out. He explained that such an altered debit or credit card suggests fraud because people etch new names and numbers onto them. That is, people use "a blank card to create a new card."

Detective Reiber testified that he has encountered lists of apparent credit card numbers and expiration dates before, which also suggests fraud. He explained that because Mastercard and Visa bank cards start with the same four numbers, people will try to "come up with a valid credit card number just by process of elimination." So, "[i]f you're able to obtain a valid credit card number and you can superimpose that number onto a card with your name on it, you could then access that account at a store or business."

Detective Reiber also testified about England's prior convictions. Before he testified, the court read for the jury a limiting instruction:

> "Certain evidence has been admitted in this case for only a limited purpose. This evidence consists of prior misconduct and may be considered by you only for the purpose of intent. You may not consider it for any other purpose."[9]

Detective Reiber then read to the jury part of the affidavit of probable cause for England's December 10, 2015 conviction for two counts of attempted forgery, reduced from charges of identity theft in the second degree and unlawful possession of payment instruments:

> "That in Pierce County, Washington on or about the 2nd day of August 2015, the defendant, Dominic Antonio England, did commit identity theft in the second degree and unlawful possession of payment instruments. Inside of the defendant's wallet were three checks in [another person's] name . . . . The defendant told police

---

[9] The trial court similarly instructed the jury before closing arguments.

> that [the victim] had given him the checks. [The victim] was contacted and stated she did not give the defendant the checks and that she was missing two whole checkbooks."

Detective Reiber also read to the jury part of England's 2014 guilty plea to identity theft that said, " 'I possessed financial information of another person with intent to commit a crime, and I did not obtain anything of value.' "

During closing, the State argued that England's prior convictions "show his intent in this case to take that information, those fictitious numbers, and generate new methods or a new capability to commit fraud." The jury convicted England of unlawful possession of payment instruments. The court sentenced England to six months of electronic home monitoring.

England appeals.

ANALYSIS

England argues that the trial court erred by denying his motion to suppress evidence because he was unlawfully seized and by admitting evidence of his prior convictions for financial crimes in violation of ER 404(b).

1. Unlawful Seizure

England argues that the court erred by denying his motion to suppress documents Officer Jendrick found in the back seat of the car. According to England, Officer Jendrick unlawfully extended the scope of his seizure beyond the investigation for physical control of a motor vehicle, which vitiated any consent to search the vehicle. The State contends Officer Jendrick lawfully extended the seizure to investigate whether England was engaged in fraud or identity theft. We agree with the State.

We review a trial court's denial of a motion to suppress to determine if substantial evidence supports the challenged findings of fact and whether those findings support the conclusions of law. *State v. Campbell*, 166 Wn. App. 464, 469, 272 P.3d 859 (2011). " 'Evidence is substantial when it is enough to persuade a fair-minded person of the truth of the stated premise.' " *State v. Z.U.E.*, 178 Wn. App. 769, 778, 315 P.3d 1158 (2014)[10] (quoting *State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009)), *aff'd*, 183 Wn.2d 610, 352 P.3d 796 (2015). Unchallenged findings of fact are verities on appeal. *Campbell*, 166 Wn. App. at 469. We review de novo the trial court's legal conclusions resulting from a suppression hearing. *Id.*

An investigative detention amounts to a seizure, so it must "be reasonable under the Fourth Amendment" to the United States Constitution. *State v. Kennedy*, 107 Wn.2d 1, 4, 726 P.2d 445 (1986) (citing *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)). A seizure under *Terry* is reasonable "if the investigating officer has 'a reasonable and articulable suspicion that the individual is involved in criminal activity.' " *State v. Howerton*, 187 Wn. App. 357, 364, 348 P.3d 781 (2015) (quoting *State v. Walker*, 66 Wn. App. 622, 626, 834 P.2d 41 (1992), *abrogated on other grounds by State v. Hill*, 123 Wn.2d 641, 870 P.2d 313 (1994)).

A "reasonable suspicion" is the "substantial possibility that criminal conduct has occurred or is about to occur." *Kennedy*, 107 Wn.2d at 6. "A reasonable suspicion can arise from information that is less reliable than that

---

[10] Internal quotation marks omitted.

required to establish probable cause."  *Howerton*, 187 Wn. App. at 365.  But it "must 'be grounded in specific and articulable facts' " and cannot be predicated on speculation or a mere hunch.  *State v. Johnson*, 8 Wn. App. 2d 728, 746, 440 P.3d 1032 (2019)[11] (quoting *Z.U.E.*, 183 Wn.2d at 617).  And "[t]he available facts must substantiate more than a mere generalized suspicion that the person detained is 'up to no good'; the facts must connect the particular person to the *particular crime* that the officer seeks to investigate."  *Z.U.E.*, 183 Wn.2d at 618 (quoting *State v. Bliss*, 153 Wn. App. 197, 204, 222 P.3d 107 (2009)).

A seizure under *Terry* is limited in scope and duration to fulfilling its investigative purpose.  *State v. Acrey*. 148 Wn.2d 738, 747, 64 P.3d 594 (2003).  If the results of the initial seizure dispel an officer's suspicions, then the officer must end the detention.  *Id.*  But if the officer's initial suspicions "are confirmed or are further aroused, the scope of the seizure may be extended and its duration may be prolonged."  *Id.*  We review the reasonableness of the police action in light of the particular circumstances of each case.  *Z.U.E.*, 183 Wn.2d at 618.

Officer Jendrick initially seized England to investigate whether he was in physical control of a motor vehicle while impaired.  Officer Timbs dispelled that suspicion after administering field tests.  But, in the meantime, Officer Jendrick saw what appeared to be lists of credit card numbers in the back seat of England's car.  He described them as "lots of 16-digit numbers" formatted in groups of four "in the same way they'd likely be printed on a credit card."  The lists also had what appeared to be expiration dates—two 2-digit numbers with the

_____

[11] Internal quotation marks omitted.

abbreviation "EX." Officer Jendrick also learned that England had prior fraud and identity theft convictions.

These specific and articulable facts supported Officer Jendrick's suspicion that England may be engaged in fraudulent behavior, and it was reasonable to extend England's seizure under *Terry* to further investigate. As such, England was lawfully seized at the time he consented to the search of his car, so his consent was not vitiated.[12] *See State v. Santacruz*, 132 Wn. App. 615, 620, 133 P.3d 484 (2006) (defendant's consent to search was not vitiated by officers expanding a *Terry* stop where the officers had an articulable suspicion of another crime).

## 2. ER 404(b)

England argues that the trial court erred by admitting evidence of his prior convictions. We agree.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *State v. DeVincentis*, 150 Wn.2d 11, 17, 74 P.3d 119 (2003). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons. *State v. Taylor*, 193 Wn.2d 691, 697, 444 P.3d 1194 (2019).

Under ER 404(b), evidence of other crimes, wrongs, or acts "is not admissible to prove the character of a person in order to show action in conformity therewith." The rule categorically bars admission of evidence to prove

---

[12] We note that Officer Jendrick also detained England under a valid Department of Corrections arrest warrant at the time he consented to the search of his car. Because neither party analyzes whether that detention is an independent basis to affirm the trial court's ruling, we do not do so here.

a person's character and show that the person acted in conformity with that character.  *State v. Gresham*, 173 Wn.2d 405, 420, 269 P.3d 207 (2012).

While ER 404(b) forbids evidence of prior bad acts to show a defendant's propensity to commit a crime, it allows admission of such evidence for other limited purposes.  *State v. Wade*, 98 Wn. App. 328, 333, 989 P.2d 576 (1999).  For example, evidence of other crimes, wrongs, or acts may be admissible to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.  ER 404(b).  Still, evidence of prior misconduct is presumptively inadmissible.  *Gresham*, 173 Wn.2d at 421.  And the proponent of the evidence must show a proper purpose.  *Id.* at 420 (citing *DeVincentis*, 150 Wn.2d at 17).

> In assessing whether to admit evidence of a person's prior misconduct,
>
> "the trial court must (1) find by a preponderance of the evidence that the misconduct occurred, (2) identify the purpose for which the evidence is sought to be introduced, (3) determine whether the evidence is relevant to prove an element of the crime charged, and (4) weigh the probative value against the prejudicial effect."[13]

*Gresham*, 173 Wn.2d at 421 (quoting *State v. Vy Thong*, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002)).  The court should resolve doubtful cases in favor of the defendant.  *State v. Smith*, 106 Wn.2d 772, 776, 725 P.2d 951 (1986).

Here, the State proffered England's prior convictions as evidence of his intent to commit the current offense.  But asserting that evidence " 'goes to

---

[13] England also argues the court erred by concluding the prejudicial effect of his convictions did not substantially outweigh their probative value.  Because we otherwise reverse, we do not reach that argument.

intent' " is not a magic incantation that will " 'open wide the courtroom doors' " to all prior-act evidence. *Wade*, 98 Wn. App. at 334-35 (quoting *State v. Saltarelli*, 98 Wn.2d 358, 364, 655 P.2d 697 (1982)). If the State offers evidence of prior acts to show intent, it must present a logical theory "*other than propensity*" that shows how the prior acts connect to the intent required to commit the charged offense. *Id.* at 334.

 "To use prior acts for a non-propensity based theory, there must be some similarity among the facts of the acts themselves." *Wade*, 98 Wn. App. at 335. Otherwise, the only relevance is the inference that "once a criminal always a criminal." *Id.* at 336. So, it must be "the facts of the prior acts, not the propensity of the actor, that establish the permissive inference admissible under ER 404(b)." *Id.* "Use of prior acts to prove intent is generally based on propensity when the only commonality between the prior acts and the charged act is the defendant." *Id.* at 335.

In *Wade*, Division Two of this court rejected the admission of prior-act evidence to prove intent where the State charged the defendant with possession with intent to deliver cocaine after he dropped a baggie of drugs and ran from a police officer. 98 Wn. App. at 332-37. There, the trial court admitted evidence under ER 404(b) of the defendant's prior conviction for possession with intent to deliver cocaine and a pending charge alleging the same conduct. *Id.* at 332. Each of those cases involved a hand-to-hand cocaine transaction. *Id.* The State argued the evidence showed the defendant's intent to sell cocaine in the case at issue. *Id.* The trial court admitted the evidence. *Id.* But Division Two reversed,

11

holding that the facts of the charged offense differed significantly from the facts of the previous offenses, so the prior acts showed only an inference of the defendant's propensity to possess and sell cocaine. *Id.* at 333-37 ("Using [the defendant]'s prior bad acts to prove current criminal intent . . . is tantamount to inviting the following inference:  Because [the defendant] had the same intent to distribute drugs previously, he must therefore possess the same intent now.").

This case is like *Wade*.  The trial court concluded that England's prior convictions for financial crimes were probative of England's intent in the charged case because they showed that England knew how to use the information and bank cards he possessed to commit identify theft and fraud.  But the State offered no facts from the prior convictions showing that England had modified bank cards to commit fraud or identity theft.  Indeed, Detective Reiber told the jury only that in 2015, England was convicted for possessing stolen checks, and that in 2014, he was convicted for possessing " 'financial information of another person with intent to commit a crime.' "[14]  Those statements show no factual nexus between the prior convictions and the charged crime.  The only similarity between them is England.  As a result, the evidence showed only that England has a propensity to commit financial crimes.  The trial court erred by admitting the prior convictions under ER 404(b).

When a court erroneously admits evidence in violation of ER 404(b), "we apply the nonconstitutional harmless error standard." *State v. Gunderson*, 181

---

[14] While the 2014 conviction included possessing another person's debit card, Social Security card, and driver's license, Detective Reiber did not tell the jury about those facts.

Wn.2d 916, 926, 337 P.3d 1090 (2014). "This requires us to decide whether 'within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected.' " *Id.*[15] (quoting *Gresham*, 173 Wn.2d at 433). If the improperly admitted evidence is of little significance in light of the evidence as a whole, the error is harmless. *State v. Fuller*, 169 Wn. App. 797, 831, 282 P.3d 126 (2012).

To convict England of unlawful possession of payment instruments, the State had to show that England possessed "two or more . . . payment instruments . . . with a fictitious . . . account number of a person or entity, with intent to commit theft, forgery, or identity theft." RCW 9A.56.320(2)(a)(ii). The court instructed the jury that "[a] person acts with intent" to commit unlawful possession of payment instruments "when acting with the objective or purpose to accomplish a result that constitutes a crime."

Evidence adduced at trial showed that England possessed a list of credit card numbers and several cards that did not belong to him, including one with the numbers scratched off. Testimony from Detective Reiber showed how England could have used those numbers and the cards to commit fraud or identity theft. From that testimony alone, the jury could have inferred that England possessed those items with criminal intent. But England's convictions of other financial crimes involving allegations of dishonesty amount to significant and powerful propensity evidence. The convictions sent the message that England is a dishonest person who committed similar crimes in the past, so he likely

---

[15] Internal quotation marks omitted.

committed them again. Indeed, in closing argument, the prosecutor told the jury to remember England's prior convictions when considering intent because they "show his intent in this case to take that information, those fictitious numbers, and generate new methods or a new capability to commit fraud." And the trial court twice instructed the jury to consider the erroneously admitted evidence "for the purpose of intent."[16] Under these circumstances, it is reasonably probable that the error materially affected the outcome of England's trial.

We conclude that the trial court properly denied England's motion to suppress the documents found in the car because he was lawfully seized at the time he consented to the search. But the court erred by admitting his prior convictions under ER 404(b), and the error was not harmless. We reverse and remand for a new trial.

_Brennan, J_

WE CONCUR:

_Coburn, J._              _Smith, C.J._

---

[16] We presume that the jury followed the court's instructions. *State v. Montgomery*, 163 Wn.2d 577, 596, 183 P.3d 267 (2008).