[No. 31718-1-I.    Division One.    March 7, 1994.]

THE STATE OF WASHINGTON, *Respondent,* v. JOSHUA
EDWARD RANDALL, *Appellant.*

*Jeff Ellis* of *The Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Ethan S. Rogers, Deputy,* for respondent.

GROSSE, J. — Joshua Edward Randall appeals the order of disposition sentencing him to 3 months of community supervision and 8 hours of community service for violation of the Uniform Controlled Substances Act (VUCSA) (possession of less than 40 grams of marijuana).

Randall contends the trial court erred in denying his motion to suppress evidence seized and his statements to police officers made during an investigatory stop. Finding that the officer had a reasonable suspicion that Randall had just committed an armed robbery, we hold that the investigatory stop was reasonable and affirm the trial court.

At approximately 9 p.m. on October 29, 1991, Officer Michael Stone of the University of Washington Police Department was patrolling the 3700 block of Brooklyn Avenue N.E. At about that time, university police dispatch reported an armed robbery in the 4200 block of University Way. The dispatch provided a description of the two suspects and described the gun used in the robbery as a small caliber handgun.

Approximately 10 minutes after the broadcast, Officer Stone saw Randall, who matched the description of one of the suspects, about five blocks south and one block west of where the robbery allegedly occurred. Randall was standing in a park with another male and the two men immediately left when they saw Officer Stone approach in his marked patrol car.

Randall parked his car and eventually found the two men in the University's Academic Computer Center. Officer Stone approached Randall, identified himself, and told Randall he fit the description of a robbery suspect. Officer Stone

asked Randall if he was carrying a weapon. Randall said he was not carrying a weapon but was carrying a pipe. At that point, Randall reached for his right front coat pocket and Officer Stone frisked him. The officer felt a hard, L-shaped object through Randall's heavy coat, stopped the frisk, and read Randall his *Miranda* rights, which Randall stated he understood. Officer Stone opened Randall's pocket and saw a pipe and a plastic sandwich bag "wrapped in a manner which based on [his] training and experience led [him] to believe that that was a container used to carry substances such as marijuana". Officer Stone removed the pipe and bag from Randall's pocket and saw a substance in the bag he believed to be marijuana.[1] Officer Stone asked Randall if he knew what the substance was and Randall said it was his dope. The officer took Randall to a more secure area, found two more baggies in the inside pocket of Randall's jacket, and formally arrested him.

Randall moved to suppress the evidence and his statements to Officer Stone. At a combined motions and fact-finding hearing, the trial court denied both motions and found Randall guilty of one count of VUCSA. At the disposition hearing, the court ordered 3 months of community supervision and 8 hours of community service.

■ Randall contends the trial court erred by denying his motion to suppress because Officer Stone lacked sufficient information to make an investigatory stop. Upon independent evaluation of the evidence, *State v. Daugherty*, 94 Wn.2d 263, 269, 616 P.2d 649 (1980), *cert. denied*, 450 U.S. 958 (1981), we disagree.

■ It is well settled that under certain circumstances the police may make an investigatory stop without a warrant. *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968); *State v. Lesnick*, 84 Wn.2d 940, 530 P.2d 243, *cert. denied*, 423 U.S. 891 (1975). An investigatory stop can be justified on the basis of information supplied to the police by another person. *Lesnick*, 84 Wn.2d at 943 (citing *Adams*

---

[1]The substance was later tested and determined to be marijuana.

*v. Williams*, 407 U.S 143, 32 L. Ed. 2d 612, 92 S. Ct. 1921 (1972)).

[N]o single rule can be fashioned to meet every conceivable confrontation between the police and citizen. Evaluating the reasonableness of the police action and the extent of the intrusion, each case must be considered in light of the particular circumstances facing the law enforcement officer.

*Lesnick*, 84 Wn.2d at 944. This analysis, requiring an examination of the totality of the circumstances in determining the validity of an investigatory stop based on information supplied to the detaining officer by another person, is consistent with the analysis used by the United States Supreme Court to ascertain the validity of an investigatory stop based on an anonymous tip. *See Alabama v. White*, 496 U.S. 325, 110 L. Ed. 2d 301, 110 S. Ct. 2412 (1990).

We recognize that in *State v. Jackson*, 102 Wn.2d 432, 688 P.2d 136 (1984), the Washington Supreme Court rejected the United States Supreme Court's "totality of the circumstances" analysis to determine whether an informant's tip created probable cause for the issuance of a search warrant,[2] and reaffirmed its adherence to the 2-pronged *Aguilar-Spinelli* test for probable cause.[3] However, a determination of probable cause requires a more demanding level of suspicion than that required to justify an investigatory *Terry* stop. *United States v. Sokolow*, 490 U.S. 1, 7, 104 L. Ed. 2d 1, 109 S. Ct. 1581 (1989). An officer may make a *Terry* stop based upon a reasonable suspicion that the detainee is engaged in criminal activity, which is less than what is required to find probable cause. *Alabama v. White*, 496 U.S. at 330. Accordingly, since a finding of probable cause entails a different inquiry than a finding of reasonable suspicion, we are not bound to follow *Jackson* and apply the *Aguilar-Spinelli* test where the validity of an investigatory stop is at issue. We hold that where an

---

[2]In *Illinois v. Gates*, 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317 (1983), the Court adopted the "totality of the circumstances" analysis for probable cause determinations involving the issuance of a search warrant based on an anonymous tip.

[3]*Aguilar v. Texas*, 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964); *Spinelli v. United States*, 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969).

investigatory stop is based on information given the detaining officer by another person, the stop is valid if under the totality of the circumstances the officer has a reasonable suspicion that the defendant was engaged in criminal activity.

> Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability. Both factors — quantity and quality — are considered in the "totality of the circumstances — the whole picture," *United States* v. *Cortez*, 449 U. S. 411, 417[, 66 L. Ed. 2d 621, 101 S. Ct. 690] (1981), that must be taken into account when evaluating whether there is reasonable suspicion.

*Alabama v. White*, 496 U.S. at 330; *accord State v. Rowe*, 63 Wn. App. 750, 822 P.2d 290 (1991).

■■ An important factor comprising the totality of circumstances which must be examined is the nature of the suspected crime. The Washington Supreme Court recognized the significance of this factor in *Lesnick*, where it affirmed the suppression of evidence seized pursuant to an anonymous tip that the defendant was in possession of gambling devices. Emphasizing the need to consider each case in light of its own facts, the court stated:

> In this case, the suspected crime was a gross misdemeanor. It posed no threat of physical violence or harm to society or the officers. Indeed it involved only an activity which was so openly tolerated in some areas that taxes were collected on the business of persons such as the defendant. This is quite a different matter from the hypothetical tips involving murder or threatened school bombings which were used by the State in its argument to illustrate the purported result of the holding of the Court of Appeals. While we are obviously not passing upon such matters, we do emphasize that if and when other cases arise they will necessarily be judged in light of their particular facts, which is the very clear, basic premise of *Terry* and *Adams*.

*State v. Lesnick*, 84 Wn.2d at 944-45.[4]

---

[4]The court in *State v. Walker*, 66 Wn. App. 622, 834 P.2d 41 (1992) failed to recognize this important distinction between crimes which involve a threat to public safety and those that do not. To apply the reasoning of *Walker*, which involved a tip that two individuals were knocking on doors, to this case, which involves a tip that an armed robbery had just been committed, would be inappropriate and we decline to do so.

The tip in this case was of an alleged armed robbery, a violent crime posing a significant threat to the safety of the officers and the public in general. An officer acting on a tip involving the threat of violence and rapidly developing events does not have the opportunity to undertake a methodical, measured inquiry into whether the tip is reliable, as does an officer acting on a tip that a nonviolent offense such as possession of drugs has been committed, see State v. Sieler, 95 Wn.2d 43, 621 P.2d 1272 (1980), or an officer seeking a search warrant based on a tip, see State v. Jackson, supra. Rather, when acting on a tip that a violent offense has just been committed, as here, the officer must make a swift decision based upon a quick evaluation of the information available at the instant his or her decision is made. To require an officer under these circumstances to stop and undertake an in-depth analysis of the reliability of the information received by the police dispatcher would greatly impede the officer's discharge of duty and would greatly increase the threat to the public safety. Under such circumstances, the officer should be able to rely on the reliability of information disseminated by police dispatch and, when his or her observations corroborate the information and create a reasonable suspicion of criminal activity, to make an investigatory stop.

Here, we find that, under the totality of the circumstances, Officer Stone had a reasonable suspicion that Randall was engaged in, or had just engaged in, criminal activity, and that the investigatory stop was reasonable. The officer received information from police dispatch that an armed robbery of a store had just occurred. The dispatch gave the location of the store and a description of the two male robbers. The dispatch also informed Officer Stone that the weapon used was a small caliber handgun. The information was fairly specific and was almost certainly given by a victim or witness.[5] Approximately 10 minutes after hearing the dispatch, Officer Stone saw two males who fit the

[5]The information did not identify either of the alleged robbers by name, thereby minimizing the possibility that the call to the police was a crank call.

description of the armed robbers, one of whom was Randall. The individuals were standing in a park, 6 blocks from the site of the robbery. The park was not used frequently at that time of the evening. As the two males saw Officer Stone approaching, they turned and left the area. The investigatory stop was reasonable.

■ We also find that Officer Stone's frisk of Randall was reasonable. The officer was acting upon information of an armed robbery committed with a small caliber handgun. Randall fit the description of one of the suspects. Officer Stone patted Randall down and felt a small hard object inside the pocket of the heavy jacket Randall was wearing. Under these circumstances, Officer Stone had a reasonable suspicion that Randall was armed and the frisk was reasonable. *State v. Smith*, 102 Wn.2d 449, 452, 688 P.2d 146 (1984).

Affirmed.

SCHOLFIELD and KENNEDY, JJ., concur.