[No. 60669-7-I.  Division One.  December 29, 2008.]

THE STATE OF WASHINGTON, *Respondent*, v. ANTHONY CRAIG
LEE, *Appellant*.

*Lila J. Silverstein* (of *Washington Appellate Project*), for appellant.

*Daniel T. Satterberg, Prosecuting Attorney,* and *Daniel Kalish, Deputy,* for respondent.

*Robert S. Mahler, Deborah L. Carstens, Janis C. Puracal,* and *Nancy L. Talner* on behalf of the American Civil Liberties Union of Washington, amicus curiae.

¶1 DWYER, A.C.J. — Anthony Lee appeals his judgment and sentence for one count of possession of cocaine, contending that evidence of his drug possession should have been suppressed as the fruit of an unlawful seizure. However, based on the totality of the circumstances, the arresting police officers had a reasonable and articulable suspicion that Lee possessed narcotics, premised upon a citizen informant's statements and one of the officer's personal observations. Accordingly, it was lawful for the officers to initiate a *Terry*[1] stop to facilitate an investigation. Thus, the trial court properly denied Lee's motion to suppress the evidence. We affirm.

I

¶2 On February 12, 2006, Seattle police officer Jacob Haines was patrolling a high-crime area when he saw a

---

[1] *Terry v. Ohio,* 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

vehicle pull up to a woman who was walking on the sidewalk. Officer Haines saw the woman speak briefly with the occupants of the car and then walk away, looking frightened. Officer Haines then approached the woman and inquired into her well-being. She told him that she did not know the men in the car and that she was scared. According to Officer Haines, the woman said her name was Kathy Stevens, gave her date of birth and the address of the homeless shelter at which she was staying, and, although he did not record it, also gave him her telephone number. Stevens told Officer Haines that the men asked her to get into the car and smoke crack cocaine with them, and they showed her a baggie with crack in it as well as a crack pipe, which she described. Officer Haines found Stevens to be completely cooperative and forthcoming.

¶3 Officer Haines then directed another officer to stop the suspected vehicle to investigate. During the stop, the officers ordered the passenger, Anthony Lee, to exit the vehicle and when he did so, a glass pipe fell from his person. Officer Haines then arrested Lee for possession of drug paraphernalia and, in a search incident to that arrest, the officers found cocaine in his pocket.

¶4 Lee was charged with possession of cocaine. The trial court denied Lee's pretrial motion to suppress the evidence against him and he was ultimately convicted as charged.

¶5 Lee appeals.

II

¶6 As an initial matter, Lee challenges specific findings of fact entered by the trial court, but does not support those assignments of error with argument or citation to authorities. Accordingly, we do not consider those assignments of error. *See* RAP 10.3(a)(5); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992); *State v. Farmer*, 116 Wn.2d 414, 433, 805 P.2d 200, 812 P.2d 858 (1991). The trial court's factual findings are therefore verities on appeal. *State v. Broadaway*, 133 Wn.2d

118, 131, 942 P.2d 363 (1997). Whether the trial court derived the correct legal conclusions from those facts is a question of law that we review de novo. *State v. Solomon*, 114 Wn. App. 781, 789, 60 P.3d 1215 (2002).

## III

¶7 Lee challenges the *Terry* stop that led to his arrest, arguing that the information provided by the citizen informant was not, by itself, sufficiently reliable to allow the officers to stop his vehicle. He contends that the trial court should have applied the *Aguilar-Spinelli* test, as derived from *Aguilar v. Texas*, 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964), and *Spinelli v. United States*, 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969), which requires a threshold examination of the informant's veracity and basis of knowledge. Moreover, Lee contends that the trial court erred because, rather than applying the *Aguilar-Spinelli* test, it erroneously applied the "totality of the circumstances" test, as described in *State v. Randall*, 73 Wn. App. 225, 228-29, 868 P.2d 207 (1994). Lee and amicus, the American Civil Liberties Union of Washington, argue that *Randall* should be overruled and that the *Aguilar-Spinelli* test should be applied to this case. For the reasons set forth below, we disagree.

¶8 "Police may conduct an investigatory stop if the officer has a reasonable and articulable suspicion that the individual is involved in criminal activity." *State v. Walker*, 66 Wn. App. 622, 626, 834 P.2d 41 (1992). A reasonable suspicion is the "substantial possibility that criminal conduct has occurred or is about to occur." *State v. Kennedy*, 107 Wn.2d 1, 6, 726 P.2d 445 (1986). For over 25 years, when determining whether police have a reasonable suspicion sufficient to justify an investigatory detention, or *Terry* stop, under the Fourth Amendment to the United States Constitution and article I, section 7 of our state constitution, courts have applied the totality of the circumstances test, rather than the *Aguilar-Spinelli* test. *See Illinois v.*

*Gates*, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983); *Randall*, 73 Wn. App. at 228-29. As such, "[w]ith the Supreme Court's adoption of the 'totality of the circumstances' approach to probable cause in *Illinois v. Gates*, the veracity element does not have the independent significance it once had." 2 WAYNE R. LAFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 3.4(a), at 223 (3d ed. 1996) (footnote omitted). In fact, a reasonable suspicion can arise from information that is less reliable than that required to establish probable cause. *Alabama v. White*, 496 U.S. 325, 330, 110 S. Ct. 2412, 110 L. Ed. 2d 301 (1990).

¶9 Specifically, "[t]he reasonableness of the officer's suspicion is determined by the totality of the circumstances known to the officer at the inception of the stop." *State v. Rowe*, 63 Wn. App. 750, 753, 822 P.2d 290 (1991). The totality of the circumstances test allows the court and police officers to consider several factors when deciding whether a *Terry* stop based on an informant's tip is allowable, such as the nature of the crime, the officer's experience, and whether the officer's own observations corroborate information from the informant. *Kennedy*, 107 Wn.2d at 8; *State v. Sieler*, 95 Wn.2d 43, 47, 621 P.2d 1272 (1980); *State v. Lesnick*, 84 Wn.2d 940, 944, 530 P.2d 243 (1975). Moreover, "the determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior." *Illinois v. Wardlow*, 528 U.S. 119, 125, 120 S. Ct. 673, 145 L. Ed. 2d 570 (2000).

¶10 As we stated in *Randall*,

"Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability. Both factors — quantity and quality — are considered in the 'totality of the circumstances — the whole picture,' *United States* v. *Cortez*, 449 U. S. 411, 417[, 66 L. Ed. 2d 621, 101 S. Ct. 690] (1981), that must be taken into account when evaluating whether there is reasonable suspicion."

73 Wn. App. at 229 (alteration in original) (quoting *Alabama v. White*, 496 U.S. at 330).

¶11 Moreover,

[N]o single rule can be fashioned to meet every conceivable confrontation between the police and citizen. Evaluating the reasonableness of the police action and the extent of the intrusion, each case must be considered in light of the particular circumstances facing the law enforcement officer.

*Lesnick*, 84 Wn.2d at 944.

¶12 It is well established that, "[i]n allowing such detentions, *Terry* accepts the risk that officers may stop innocent people." *Wardlow*, 528 U.S. at 126. However, despite this risk, "[t]he courts have repeatedly encouraged law enforcement officers to investigate suspicious situations." *State v. Mercer*, 45 Wn. App. 769, 775, 727 P.2d 676 (1986).

¶13 Furthermore, it is clear that an officer's reasonable suspicion may be based on information supplied by an informant. *Kennedy*, 107 Wn.2d at 7-8. But "[a]n informant's tip cannot constitutionally provide police with such a suspicion unless it possesses sufficient 'indicia of reliability.' " *Sieler*, 95 Wn.2d at 47 (quoting *Adams v. Williams*, 407 U.S. 143, 147, 92 S. Ct. 1921, 32 L. Ed. 2d 612 (1972)). When deciding whether this "indicia of reliability" exists, the courts will generally consider several factors, primarily (1) whether the informant is reliable, (2) whether the information was obtained in a reliable fashion, and (3) whether the officers can corroborate any details of the informant's tip. *Sieler*, 95 Wn.2d at 47; *Lesnick*, 84 Wn.2d at 944.

¶14 A citizen-witness's credibility is enhanced when he or she purports to be an eyewitness to the events described. *State v. Vandover*, 63 Wn. App. 754, 759, 822 P.2d 784 (1992); *United States v. Colon*, 111 F. Supp. 2d 439, 443 (S.D.N.Y. 2000) ("crystal clear that the caller had first hand knowledge of the alleged criminal activity"), *rev'd on other grounds*, 250 F.3d 130 (2d Cir. 2001). Indeed, "victim-witness cases usually require a very prompt police response in an effort to find the perpetrator, so that a leisurely investigation of the report is seldom feasible." 2 LaFave,

*supra*, at 210. Moreover, courts should not treat information from ordinary citizens who have been the victim of or witness to criminal conduct the same as information from compensated informants from the criminal subculture. 2 LaFave, *supra*, at 204.

> [A]n ordinary citizen who reports a crime which has been committed in his presence . . . stands on much different ground than a police informer. He is a witness to criminal activity who acts with an intent to aid the police in law enforcement because of his concern for society or for his own safety.

2 LaFave, *supra*, at 208. Thus, the police are entitled to give greater credence to a report from a citizen crime victim than to a report from a criminal associate of the suspect. 2 LaFave, *supra*, at 205. Indeed, there is no constitutional requirement that police distrust ordinary citizens who present themselves as crime victims and "[c]ourts are not required to sever the relationships that citizens and local police forces have forged to protect their communities from crime." *United States v. Christmas*, 222 F.3d 141, 145 (4th Cir. 2000).

¶15 Three Washington Supreme Court cases have discussed investigatory stops based on an informant's tip: *Kennedy*, 107 Wn.2d 1, *Sieler*, 95 Wn.2d 43, and *Lesnick*, 84 Wn.2d 940. All three rely on *Adams*, 407 U.S. 143. The *Adams* Court did not apply the two-pronged *Aguilar-Spinelli* test. Instead, it emphasized how the application of a single, inflexible test would not work for *Terry* stops based on an informant's tip:

> Informants' tips, like all other clues and evidence coming to a policeman on the scene, may vary greatly in their value and reliability. One simple rule will not cover every situation. Some tips, completely lacking in indicia of reliability, would either warrant no police response or require further investigation before a forcible stop of a suspect would be authorized. But in some situations—for example, when the victim of a street crime seeks immediate police aid and gives a description of his assailant, or when a credible informant warns of a specific

impending crime—the subtleties of the hearsay rule should not thwart an appropriate police response.

*Adams*, 407 U.S. at 147.

¶16 It is clear that if the *Adams* Court had applied the *Aguilar-Spinelli* test, the seizure at issue therein would not have been upheld because the officer did not have any information about the basis of the informant's knowledge. *Adams*, 407 U.S. at 148 (noting that the "informant's unverified tip may have been insufficient for a narcotics arrest or search warrant" under the *Aguilar-Spinelli* test). Instead, the Court held that since the informant had previously been reliable, and since the citizen provided the tip to the officer in person, the tip had a sufficient indicia of reliability to support a *Terry* stop. *Adams*, 407 U.S. at 146-47. Thus, *Adams* provided the first formulation of the totality of the circumstances test for *Terry* stops based primarily on information from citizens. *See Gates*, 462 U.S. at 233-34 (adopting totality of circumstances test for probable cause determinations and citing *Adams* extensively to explain the test); *see also Kennedy*, 107 Wn.2d at 23 (Dolliver, C.J., dissenting) ("In the *Terry* context, this [totality of the circumstances] 'test' first appeared in *Adams v. Williams*.").

¶17 A careful reading of precedent also demonstrates that the *Kennedy* decision was the latest Washington Supreme Court decision on this issue and no subsequent opinion of this court or our Supreme Court places the *Kennedy* opinion's authority into doubt. Therefore amicus's reliance on *State v. Hopkins*, 128 Wn. App. 855, 117 P.3d 377 (2005), *State v. Jones*, 85 Wn. App. 797, 934 P.2d 1224 (1997), and *State v. Hart*, 66 Wn. App. 1, 830 P.2d 696 (1992), for the contrary proposition is misplaced. The court in *Hart* does not discuss *Kennedy*, and *Kennedy* is not even cited in *Hopkins* or *Jones*.[2]

---

[2] Nor could the Court of Appeals overrule our Supreme Court on a question of State Constitutional law:

[O]nce this court has decided an issue of state law, that interpretation is binding on all lower courts until it is overruled by this court. *Godefroy v. Reilly*,

¶18 Amicus also incorrectly suggests that the Washington Supreme Court in *State v. Jackson*, 102 Wn.2d 432, 688 P.2d 136 (1984), rejected the totality of the circumstances test for *Terry* stops based on information from informants. The *Jackson* decision responded to the 1983 decision in *Gates*, 462 U.S. at 233-34, wherein the United States Supreme Court replaced the *Aguilar-Spinelli* test with a totality of the circumstances test for search warrant probable cause determinations. In *Jackson*, the court refused to follow the lead of the United States Supreme Court and held that, under article I, section 7, a search warrant based on an informant's tip would have to continue to satisfy the reliability and basis of knowledge prongs of *Aguilar-Spinelli*. 102 Wn.2d at 438.

¶19 Nonetheless, the *Jackson* decision is inapposite to the issue presented here: the appropriate test under article I, section 7 for an investigatory stop based partly or wholly on an informant's tip. First, the issue in *Jackson* involved the showing required of an officer-affiant in order to obtain a warrant authorizing the search of a home, not the showing required to make a traffic stop in public. The *Jackson* decision is consistent with prior rulings that article I, section 7 of the Washington constitution affords more protection to peoples' homes than that provided by the Fourth Amendment. *See, e.g., State v. Ferrier*, 136 Wn.2d 103, 111-12, 960 P.2d 927 (1998) (" '[i]n no area is a citizen more entitled to his privacy than in his or her home. For this reason, the closer officers come to intrusion into a dwelling, the greater the [article I, section 7] protection' " (first alteration in original) (quoting *State v. Young*, 123 Wn.2d 173, 185, 867 P.2d 593 (1994))). Second, the *Jackson* court focused on the showing necessary to meet the probable cause standard of a search warrant, not the reasonable suspicion standard of an investigatory traffic stop, a much

---

146 Wash. 257, 262 P. 639 (1928); *cf. Hutto v. Davis*, 454 U.S. 370, 375, 70 L. Ed. 2d 556, 102 S. Ct. 703 (1982) ("unless we wish anarchy to prevail within the federal judicial system, a precedent of this Court must be followed by the lower federal courts . . .").

*State v. Gore*, 101 Wn.2d 481, 487, 681 P.2d 227 (1984).

lower standard. *See United States v. Sokolow*, 490 U.S. 1, 7, 109 S. Ct. 1581, 104 L. Ed. 2d 1 (1989). And finally, in Washington, prior to the *Jackson* case, the *Aguilar-Spinelli* test has long been the method of evaluating the veracity of search warrants based on informants' tips. *Jackson*, 102 Wn.2d at 436.

¶20 In sum, the trial court in this case properly considered the totality of the circumstances known to the officers at the time of the investigatory detention. Those circumstances, as established by evidence that is not disputed on appeal, were as follows: Stevens reported that two individuals in a specific car pulled over and told her to get in the vehicle to smoke crack cocaine while showing her that they possessed both crack and a crack pipe. Furthermore, Officer Haines corroborated much of Stevens's report in that he saw the car pull up to her in a high-crime area, saw the occupants speak with her briefly and saw her then walk quickly away, appearing frightened. The undisputed facts support the trial court's conclusion that the *Terry* stop was justified by the informant's statements and the circumstances corroborated by the officer's own observations.

## IV

¶21 Finally, Lee argues that the State failed to meet its burden on his CrR 3.6 motion. Lee appears to be arguing that the State did not have probable cause to arrest him after the *Terry* stop. However, Lee did not raise this issue at the CrR 3.6 hearing. Instead, he focused exclusively on whether the officer conducted a proper *Terry* stop. We reject Lee's attempt to raise additional issues for the first time on appeal. RAP 2.5(a); *State v. Carpenter*, 52 Wn. App. 680, 683, 763 P.2d 455 (1988) (holding that an objection has not been reserved for appeal where the objection on appeal is different than the one presented in the trial court).

¶22 Affirmed.

Cox and Lau, JJ., concur.

Review denied at 166 Wn.2d 1016 (2009).