# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON, )     No. 68437-0-I
)
         Respondent, )     DIVISION ONE
)
         v. )     UNPUBLISHED OPINION
)
DVONTAVEOUS NAAUN HOSTON, )
)     FILED: August 12, 2013
         Appellant. )

GROSSE, J. — Reports of citizen-eyewitnesses of criminal activity are presumed credible. An officer acting on a citizen-eyewitness report involving the threat of violence and rapidly developing events is entitled to rely on the reliability of the report and, where the officer's observations corroborate the information in the report and create a reasonable suspicion of criminal activity, the officer is entitled to make an investigatory stop. Here, under the totality of the circumstances, the officers were entitled to rely on the report of the citizen-eyewitnesses about a person who flashed a gun in public. The officers had a reasonable suspicion that the appellant was engaged in criminal activity. The investigatory stop and frisk were reasonable.

On July 22, 2011, King County Sheriff Deputies Matthew Paul and Coulson Young were on foot patrol in downtown Seattle near Third Avenue and Pine Street, policing Metro Transit bus stops and bus zones. The area is known for gang activity, fights, and narcotics transactions. While turning onto Pike Street from Third Avenue, the deputies came upon a group of about 8 to 12 "juvenile males in a giant circle with two people in the center actively pushing at each other." The males were yelling, arguing, and screaming. Two people in the

center of the circle bumped chests, which is an indication that a fight is about to start. The deputies yelled at the group to disperse. The group split into two smaller groups; one group went north on Third Avenue and the other group went east on Pike Street. Based on their experience, the deputies believed that they were witnessing a "rolling fight," which means that the two groups would walk to another corner, rejoin each other in a large circle, and resume fighting.

After the large group broke up, three men in their mid to late 20s approached the deputies from another direction and asked to talk to them. All three of the men said that they saw one member of the group flash a silver handgun and then put the gun in his waistband. All three of the men also described this male as black, medium build, wearing a red jacket or sweatshirt, with short afro-style hair and a black pick sticking out of his hair.

The information the men relayed to the deputies alarmed them because there had recently been several shootings in Seattle and because, in the deputies' experience, red clothing signifies gang membership. They decided to search for the person the three men described. Deputy Paul got on the Seattle Police Department's (SPD's) radio and asked the surveillance units who were using security cameras inside Macy's department store to look for the male who purportedly was carrying a gun. The SPD officers inside Macy's told the deputies that the male Deputy Paul described was standing in front of the McDonald's at Third Avenue and Pine Street.

The deputies approached the suspect, later identified as appellant Dvontaveous Hoston, and Deputy Paul grabbed his arms from behind. Hoston

tensed and dropped his right arm to his hip. That concerned the deputy because the three men said the gun was in the front of Hoston's waistband. Deputy Paul frisked Hoston and found a silver handgun in the front of his waistband. The gun was loaded.

Deputy Paul handcuffed Hoston and told him he was under arrest. Hoston, who had a prior conviction of delivery of cocaine, was charged with first degree unlawful possession of a firearm. He filed a motion to suppress the gun the deputies seized from him. After a hearing, the trial court denied Hoston's motion. The court applied the "totality of the circumstances" test to determine whether Deputy Paul's frisk of Hoston was reasonable and concluded:

> 2. The information provided to Deputy Paul and Deputy Young was sufficiently reliable because it was volunteered by three individuals who presented themselves to police and offered a detailed description of the subject. Because the informants were citizens who saw the gun first-hand, they are presumed under the law to be more reliable than professional or anonymous informants. The presence of a person flashing a gun in the context of a rolling fight created a volatile situation. The deputies would have been derelict in their duties had they failed to immediately investigate.
>
> 3. Deputy Paul had reasonable suspicion for frisking defendant. The reports of a man with a gun in the context of a rolling fight gave rise to valid concerns about a potential of violence and a risk to community safety.
>
> 4. Deputy Paul also had a reasonable suspicion that a felony had occurred.
>
> 5. Deputy Paul's reasonable suspicion ripened into probable cause to arrest after he located the gun.

The matter proceeded to trial, and a jury found Hoston guilty as charged. Hoston appeals, contending that the trial court erred by denying his motion to suppress the gun.

We review findings of fact to which error has been assigned to determine whether substantial evidence in the record supports the findings and, in turn, whether those findings support the conclusions of law.[1] Unchallenged findings are verities on appeal.[2] We review conclusions of law de novo.[3]

A warrantless, investigatory stop, or Terry[4] stop, must be reasonable under both the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington State Constitution.[5] "An investigatory stop is reasonable if the arresting officer can attest to specific and objective facts that provide a reasonable suspicion that the person stopped has committed or is about to commit a crime."[6]

A report of criminal activity from a citizen-witness may provide reasonable suspicion to justify an investigatory detention.[7] Carrying a firearm is a crime if it is carried or displayed in a manner that either manifests an intent to intimidate another or that warrants alarm for the safety of other persons.[8] We determine whether the requisite reasonable suspicion existed by applying the totality of the circumstances test.[9] Relevant factors are "(1) whether the informant is reliable, (2) whether the information was obtained in a reliable fashion, and (3) whether

---

[1] State v. Ross, 106 Wn. App. 876, 880, 26 P.3d 298 (2001).
[2] State v. Hill, 123 Wn.2d 641, 644, 870 P.2d 313 (1994).
[3] State v. Hopkins, 128 Wn. App. 855, 862, 117 P.3d 377 (2005).
[4] Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).
[5] Hopkins, 128 Wn. App. at 862.
[6] Hopkins, 128 Wn. App. at 862.
[7] State v. Lee, 147 Wn. App. 912, 918-19, 199 P.3d 445 (2008).
[8] RCW 9.41.270.
[9] Lee, 147 Wn. App. at 916-17; State v. Randall, 73 Wn. App. 225, 228-29, 868 P.2d 207 (1994).

the officers can corroborate any details of the informant's tip."[10] Police officers may presume that citizen-witness reports are credible.[11] A citizen-witness's credibility is enhanced when he or she is an eyewitness to the events described.[12]

The court's opinion in State v. Franklin[13] is instructive. In that case, a citizen told a police officer working as an off-duty security guard at a bus station that he saw a person in the restroom with a gun. The citizen gave the officer a description of the person's clothes and said he was in the middle stall. The officer went directly to the rest room and saw that the middle stall was occupied by a person wearing clothes that matched the description the citizen had given. The officer detained the person when he came out of the stall and found a revolver on his person. In determining that the detention in the rest room was reasonable, the court stated: "[C]ourts have recognized the need for an immediate investigatory stop when an anonymous informant of undetermined reliability states that he or she observed a suspect carrying or displaying a gun in a public place."[14] The court's reasoning is applicable here:

> [T]he unidentified citizen informant in the present case observed a person in public with a firearm and reported his observations almost contemporaneously with their occurrence. The informant specified the public location of the suspect and gave a description of the suspect's attire. In these unique and potentially dangerous circumstances, such a tip is sufficiently reliable to support an investigatory detention if the police immediately verify the accuracy of the description and location of the suspect. Immediate police

---

[10] Lee, 147 Wn. App. at 918.
[11] State v. Wakeley, 29 Wn. App. 238, 241, 628 P.2d 835 (1981).
[12] State v. Vandover, 63 Wn. App. 754, 759, 822 P.2d 784 (1992).
[13] 41 Wn. App. 409, 704 P.2d 666 (1985).
[14] Franklin, 41 Wn. App. at 412-13.

verification of the tip's innocuous details supports reasonable inferences that the anonymous informant's information is based on eyewitness observation, and that the unverified portion of the tip may also be accurate. Given the potential danger to the public in this case, we think the informant's reliability was sufficiently established for purposes of a temporary investigatory detention.[15]

Another factor relevant to the totality of the circumstances is the nature of the suspected crime.[16] In this regard, the court's opinion in State v. Randall[17] is instructive. In that case, the officer acted on a police dispatch report of an armed robbery. The dispatch provided a description of two suspects and described the gun used in the robbery. Acting on the information from the dispatch, the officer located and detained a person who matched the description of one of the subjects and found marijuana on his person. In determining that the officer had sufficient information to make an investigatory stop, the court noted the difference between a suspected crime that poses no threat of physical violence or harm to society or the officers and a suspected crime that is violent and poses a significant threat to the safety of the officers and the general public:

> An officer acting on a tip involving the threat of violence and rapidly developing events does not have the opportunity to undertake a methodical, measured inquiry into whether the tip is reliable, as does an officer acting on a tip that a nonviolent offense such as possession of drugs has been committed. . . . Rather, when acting on a tip that a violent offense has just been committed, as here, the officer must make a swift decision based upon a quick evaluation of the information available at the instant his or her decision is made.[18]

---

[15] Franklin, 41 Wn. App. at 413 (citations omitted).
[16] Randall, 73 Wn. App. at 229.
[17] 73 Wn. App. 225, 868 P.2d 207 (1994).
[18] Randall, 73 Wn. App. at 230 (citations omitted).

The court reasoned that under those circumstances, requiring the officer to stop and undertake an in-depth analysis of the reliability of the information from the dispatch would greatly impede the officer in the discharge of his duty and would greatly increase the threat to public safety. Rather, the court concluded that under the circumstances, the officer should be entitled to rely on the reliability of the information from the dispatch and, when the officer's own observations corroborate the information from the dispatch and create a reasonable suspicion, to make an investigatory stop.[19] We see no reason why the same reasoning should not apply where a citizen-eyewitness, rather than a police dispatch, reports a crime that poses a threat to public safety, here carrying or displaying a firearm in a manner that either manifests an intent to intimidate another or that warrants alarm for the safety of other persons.

Here, the deputies, based on their training and experience, perceived the situation to be potentially violent. The deputies saw two members of the large group bump chests, which they knew indicated a fight was imminent. When they ordered the group to disperse, the deputies recognized that a rolling fight had developed and that it was very likely the two groups would move to another corner, reconvene, and resume fighting. Three citizen-eyewitnesses gave the deputies the same information that one of the males in the large group flashed a gun and gave the same detailed description of the male's appearance and location of the gun in his waistband. The circumstances were rapidly developing and posed a clear threat of violence and harm to the public safety. The deputies'

---

[19] Randall, 73 Wn. App. at 230.

7

observations corroborated the citizens' information and created a reasonable suspicion of criminal activity, thus justifying the investigatory stop.[20]

For the same reasons, Deputy Paul's frisk of Hoston was reasonable. The deputies were acting on information that a person walking in downtown Seattle flashed a gun in a situation that could have quickly turned potentially violent. Hoston fit the description of the person who flashed the gun. All three of the citizens also said that the person put the gun in his waistband. Hoston's hand went to his waistband when Deputy Paul grabbed him. Under these circumstances, the deputies had a reasonable suspicion that Hoston was armed. The frisk was reasonable.

Affirmed.

WE CONCUR:

---

[20] We disagree with Hoston that State v. Hopkins, 128 Wn. App. 855, 117 P.3d 377 (2005), is dispositive. Rather, Hopkins is distinguishable. That case involved a 911 call of a minor in possession of a gun at a pay phone. The officers found a person matching the description the caller gave, but saw no gun and, unlike this case, observed no dangerous, criminal, or suspicious behavior. Further, the caller gave inaccurate information about the appellant's height, weight, and age, and said only that the minor was scratching his leg with what appeared to be a gun and that he thought the gun was in the minor's right pocket. Florida v. J.L., 529 U.S. 266, 120 S. Ct. 1375, 146 L. Ed. 2d 254 (2000), is likewise distinguishable. That case involved an anonymous call to the police about a young male standing at a bus stop carrying a gun. Again, the officers observed no criminal activity. And, there was nothing to indicate that the caller was an eyewitness.