COURT OF APPEALS DIV I
2014 MAR 10 AM 9: 48


# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | ) |
| | ) No. 69403-1-I |
| Respondent, | ) |
| | ) DIVISION ONE |
| v. | ) |
| | ) |
| THOMAS J. WENGER, | ) UNPUBLISHED OPINION |
| | ) |
| Appellant. | ) FILED: <u>March 10, 2014</u> |
| | ) |

SPEARMAN, J. – A woman called 911, identified herself, and reported observing a possible attempted burglary in progress at an Everett church. Based on circumstances suggesting the reliability of the citizen's information and their own observations at the scene, police officers stopped Thomas Wenger for further investigation. Because the circumstances supported a reasonable suspicion that Wenger was involved in criminal activity, the trial court did not err in denying Wenger's motion to suppress evidence seized after his detention. We therefore affirm his conviction for possession of methamphetamine while on community custody.

## FACTS

The material facts are undisputed. At 1:27 p.m. on August 1, 2012, a woman called 911 and reported observing a possible burglary in progress at one of the

entrances to Our Lady of Perpetual Help Church in Everett. The caller identified herself as Gayle Evans and said that two men were "looking like they are trying to fix a bike, but one male is trying to jimmy into the door."[1] She described the suspects as two white males with grayish hair and wearing light-colored t-shirts. Evans told the 911 operator that she would keep going, but provided her telephone number and said that the police could call her if they needed additional information.

In response to the report, Everett Police Officer Alex Soderstrom arrived at the church at 1:30 p.m. and began looking for the suspects. In an area near the location of the suspected break-in attempt, a man matching Evans' general description jumped out of the bushes and started to flee on a bicycle. Officer Soderstrom activated his emergency lights and siren and the man, Joshua Cooper, stopped and got off his bicycle.

While another officer spoke with Cooper, Officer Soderstrom walked toward the nearby church entrance. As he turned the corner past the entrance, Soderstrom immediately encountered a man standing next to a bicycle. The man, later identified as Thomas Wenger, got on the bicycle and fled, ignoring Soderstrom's orders to stop.

Another officer stopped Wenger a short distance away and arrested him on an outstanding warrant. Wenger was wearing a black t-shirt and had brown hair. Officers found methamphetamine in a search incident to the arrest. The officers saw no other persons or bicycles in the area.

---

[1] Ex. 3, at 1.

The State charged Wenger with one count of possession of a controlled substance while on community custody. Prior to trial, he moved to suppress the methamphetamine seized after his arrest, arguing that police officers lacked a reasonable suspicion to detain him based on the caller's 911 tip.

The trial court denied the motion to suppress. Following a trial on stipulated evidence, the court found Wenger guilty as charged and imposed a 14-month standard range sentence.

## ANALYSIS

Wenger contends that neither the informant nor the informant's tip was sufficiently reliable to support a reasonable suspicion of criminal activity. He argues that the evidence seized after his unlawful detention must therefore be suppressed.

"When reviewing the denial of a suppression motion, an appellate court determines whether substantial evidence supports the challenged findings of fact and whether the findings support the conclusions of law." State v. Garvin, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009). We review challenged conclusions of law de novo. State v. Armenta, 134 Wn.2d 1, 9, 948 P.2d 1280 (1997). Wenger has assigned error to only one finding of fact. The remaining findings are therefore verities on appeal. State v. O'Neill, 148 Wn.2d 564, 571, 62 P.3d 489 (2003).

Consistent with the Fourth Amendment and article I, section 7 of the Washington State Constitution, police officers may conduct an investigatory stop if the officers have a reasonable and articulable suspicion that an individual is involved in criminal activity. State v. Sieler, 95 Wn.2d 43, 46, 621 P.2d 1272 (1980); see also Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The necessary

level of articulable suspicion is "a substantial possibility that criminal conduct has occurred or is about to occur." State v. Kennedy, 107 Wn.2d 1, 6, 726 P.2d 445 (1986).

We review the reasonableness of the officer's suspicions by considering the totality of the circumstances known to the officer at the time of the stop. State v. Lee, 147 Wn. App. 912, 917, 199 P.3d 445 (2008). The determination of reasonable suspicion "must be based on commonsense judgments and inferences about human behavior." Id. (quoting Illinois v. Wardlow, 528 U.S. 119, 125, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000)).

An officer's reasonable suspicion may be based on an informant's tip if the information possesses sufficient "'indicia of reliability.'" Sieler, 95 Wn.2d at 47 (quoting Adams v. Williams, 407 U.S. 143, 147, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972)). In assessing indicia of reliability, courts consider all relevant factors, including (1) the reliability of the informant, (2) whether the information was obtained in a reliable manner, and (3) whether officers corroborated any details of the informant's tip. Id. (citing State v. Lesnick, 84 Wn.2d 940, 530 P.2d 243 (1975)). Contrary to Wenger's assertions, the legal standard for determining reasonable suspicion based on an informant's tip is the "totality of the circumstances" test, not the two-part reliability analysis derived from Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). State v. Marcum, 149 Wn. App. 894, 903, 205 P.3d 969 (2009); see also Lee, 147 Wn. App. at 920-21.

Here, a named citizen informant reported observing possible criminal activity while it was in progress. "A citizen-witness's credibility is enhanced when he or she purports to be an eyewitness to the events described." Lee, 147 Wn. App. at 918 (citing State v. Vandover, 63 Wn. App. 754, 759, 822 P.2d 784 (1992)). In addition, Evans communicated more than conclusory allegations of criminal behavior. She identified the precise location, described the suspects, and provided a brief but specific description of the suspicious activity, as well as additional details indicating the presence of bicycles. She also explained that she was continuing on her way, but left her telephone number and expressed her willingness to provide additional assistance if contacted.

Officers arrived at the scene within three minutes of Evans' report. Almost immediately, they encountered two men near a church entrance in the general area that Evans had described. Wenger has not challenged the trial court's finding that Joshua Cooper matched the informant's general description. Both men were on bicycles and attempted to flee immediately upon seeing the police. Police saw no one else on the church grounds or nearby. Although Cooper stopped, Wenger ignored the orders of a uniformed officer and attempted to escape. The suspects' flight from police officers is a suspicious circumstance that may be considered in determining whether officers had a reasonable suspicion of criminal activity. State v. Gatewood, 163 Wn.2d 534, 540, 182 P.3d 426 (2008); State v. Little, 116 Wn.2d 488, 496, 806 P.2d 749 (1991); see also Illinois v. Wardlow, 528 U.S. at 124 ("nervous, evasive behavior," including unprovoked flight upon noticing police, is a "pertinent factor" in determining reasonable suspicion).

At the time they detained Wenger, police officers were aware that a named and cooperative eyewitness had described specific suspicious activity occurring near a church entrance. The informant also reported the presence of a bicycle. Upon arriving at the reported location three minutes later, the officers encountered two men who matched the general description of reported suspects. No one else was in the area. Both men were on bicycles and both men fled immediately upon noticing the officers.

Viewed together, the foregoing circumstances, including the informant's eyewitness account, the officers' prompt corroboration of several details, and their own observations, were sufficient to establish the reliability of the tip and create a reasonable, articulable suspicion of criminal activity justifying an investigatory detention. The trial court did not err in denying Wenger's motion to suppress.

On appeal, Wenger challenges the trial court's finding that he matched the informant's "general description," noting that the record indicated he had brown, rather than "grayish," hair, and that he was wearing a black, rather than a "light colored" t-shirt. When considered in light of all of the circumstances known to the officers, however, including the other details of the tip and the officers' own observations, such discrepancies did not render the decision to detain Wenger unreasonable.

Affirmed.

WE CONCUR:

-6-