# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| CITY OF LONGVIEW, | No. 47735-1-II |
| Respondent, | |
| v. | |
| MARK REYES, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, P.J. – Mark Reyes appeals his municipal court bench trial conviction for driving while under the influence of intoxicants (DUI). He challenges the municipal court's denial of his motion to suppress, arguing that (1) the court's findings that a 911 caller was "a known informant" or a "named informant" are not supported by substantial evidence and (2) the municipal court erred when it denied the motion to suppress evidence because the stop was based solely on information from a 911 caller and there was no basis from which the officers could determine the caller's identity and reliability. Because the evidence shows that the totality of the circumstances did not establish the 911 caller's reliability or otherwise establish reasonable suspicion, we hold that the municipal court erred when it denied Reyes's motion to suppress. Thus, we reverse the municipal court order denying Reyes's motion to suppress and remand for further proceedings.

FACTS

On April 29, 2014, at 12:15 AM, the following 911 call occurred:

Operator:    911
Caller:      Yes, I'm at the . . . uh . . . the AM/PM on 15th.
Operator:    Okay . . . [.]
Caller:      And somebody just left in a Dodge Durango, alright?  He's headed towards Safeway.  681 WWK.  It's a blue Dodge Durango, and this guy is fuck - excuse me, he's really, really drunk.  He's like barefooted, somebody told me that DOC Off [sic] - 681 Walter. . . .
Operator:    Yeah, now I know what you're reporting.  So is it a possible DUI?  A dark blue Dodge Durango?
Caller:      It's definitely - I mean this guy[']s drunk.  He's fried.  He don't [sic] know his own name.
Operator:    Okay. . . [.]
Caller:      And he's going fast now.  He's going heading [sic] towards Safeway.
Operator:    Okay, male driver then?
Caller:      Yes, a male driver.  Um . . . [.]
Operator:    Did you see his driving, or did you just contact him in the store or what?
Caller:      No!  I seen [sic] him get out of his vehicle, I was talking to somebody else in the vehicle next to him, and uh . . . I mean he's got to [sic] hug me - he could barely stand.  He was barefooted, pair of shorts on and a sweatshirt, and he's fried, toast, I mean uh. . . .
Operator:    Okay, may I have your name please?
Caller:      Name[']s Chris.
Operator:    Last name?
Caller:      Melillo.
Operator:    Okay.  I'll put out the information.  Thank you for calling.
Caller:      Yeah, you got to try an [sic] get him because he's going fast, and uh you know, somebody could get run over, you know?
Operator:    Okay, I'm [going to] let [them] know.
Caller:      Okay.  Did you get that plate?
Operator:    [Yes]!  Got it.
Caller:      Okay, bye-bye.
Operator:    Thank you, bye-bye.

Clerk's Papers (CP) at 58-59.

The dispatcher sent out an "attempt to locate" the vehicle reported to 911.  Report of

Proceedings (RP) at 4.  Officer Michael Maini heard the dispatch, ran the license plate, and

2

discovered it was registered to Reyes. Officer Maini knew Reyes from having arrested him for DUI a "couple of months" earlier. RP at 5.

An officer eventually located the vehicle "approaching the curb in front of [Reyes's] residence." RP at 5. When Officer Maini approached the vehicle, he noticed a "strong odor of an alcoholic beverage coming from the vehicle" and recognized Reyes as the driver. RP at 5.

After administering various sobriety tests, Officer Maini arrested Reyes for DUI. At some point,[1] Officer Maini obtained the 911 caller's full name, date of birth, and address from the dispatch center. Officer Maini's incident report, which he completed on the day of the incident, contained the 911 caller's full name, date of birth, and address.

Reyes moved to suppress all of the evidence, arguing that the 911 call did not provide sufficient reasonable suspicion to stop Reyes's vehicle because the police failed to establish the reliability of the named but unknown informant before the stop. Officer Maini was the only witness to testify at the suppression hearing.

In addition to the facts set out above, Officer Maini admitted that before he approached Reyes's vehicle, he did not know who had been driving the reported vehicle and he had not observed any "bad driving." RP at 7. Officer Maini also admitted that he had not attempted to "verify" the 911 caller before contacting Reyes, but he testified that he contacted the reporting party after the stop. RP at 8. Officer Maini could not, however, recall if the dispatcher had provided him with the 911 caller's full name and address before or after he (Officer Maini) contacted Reyes.

---

[1] As noted below, Officer Maini testified that he did not recall whether he obtained the 911 caller's full name and address before or after he contacted Reyes.

Reyes argued that the only information the officers had was the 911 caller's name and that, without further verifications, this was not sufficient to establish that the caller was "a known or identified reporting person." RP at 12. He argued that without additional verification, the 911 caller had to be treated as an anonymous informant and the stop was not justified without the officers observing some kind of corroborating evidence, such as bad driving.

The municipal court denied Reyes's motion to suppress. It entered the following written findings of fact:

1.  On April 29, 2014, at 12:15 am, Longview Police officers, including Officer Maini, were dispatched, based on a call to 911 from *a known informant* reporting a person possibly driving while impaired by alcohol.
2.  The *known informant* gave his name and address to 911 and Officer Maini was advised that the report was from *a known informant. It is unclear from the record whether Officer Maini knew the reporting party's actual name, address or phone number or observed it on his patrol car computer before his stop of the defendant*.
3.  The information Officer Maini possessed prior to the stop was as follows:
    a.  That *a named informant* personally observed the driver stumbling outside his vehicle.
    b.  The *named informant* saw the driver leave the AM/PM on 15th Avenue in Longview, Washington headed toward the Safeway store.
    c.  The *named informant* believed the driver was impaired by alcohol.
    d.  The *named informant* specifically described the vehicle as a blue Dodge Durango with Washington license number 681 WWK.
    e.  Officer Maini checked the license plate and recognized the name of the registered owner of the vehicle as the defendant, with whom he had had a recent contact for a DUI investigation.

CP at 9-10 (emphasis added).

The municipal court issued the following conclusions of law:

1.  Warrantless investigatory stops must be reasonable under both the Federal and State Constitutions.
2.  An investigative stop is reasonable if supported by a reasonable suspicion that an individual has violated the law.

    3.     An informant's tip can provide a reasonable suspicion to justify an investigative stop so long as it has sufficient indicia of reliability considering the totality of the circumstances.

    4.     The information supplied by the *known citizen informant* in this case exhibited sufficient indicia of reliability for the following reasons:

        a.     The 911 call was a first-hand observation report of drunk driving in progress[.]

        b.     The nature of the crime required an immediate response to protect public safety.

        c.     The 911 call was recorded, a commonly known fact, which heightens reliability and lessens the possibility of fabrication.

        d.     The informant's information was fresh and specific as to time, place, car[ ] make, and model and contained not only the conclusion of the defendant's intoxication, but direct observations of impaired behavior.

        e.     The innocuous factual details provided by the informant were corroborated by the police within minutes of the 911 call.

CP at 10-11 (emphasis added).

Reyes waived his right to a jury trial. The municipal court found him guilty of DUI.

Reyes appealed to the superior court. The superior court agreed with Reyes that the municipal court had erred in finding the 911 caller was a "known" informant. Instead, the superior court characterized the 911 caller as a "named but unconfirmed informant." CP at 111. It then found that "[t]he named and unconfirmed informant provided a lot of non-inculpatory information that was confirmed" and concluded that the "totality of the circumstances" amounted to reasonable suspicion and justified an investigatory traffic stop.

Reyes moved for discretionary review. A commissioner of this court granted review.

ANALYSIS

I. LEGAL PRINCIPLES

We review a municipal court's decision on a motion to suppress under the standards in RALJ 9.1. *State v. Moore*, 178 Wn. App. 489, 497, 314 P.3d 1137 (2013) (citing *State v. Ford*,

110 Wn.2d 827, 829, 755 P.2d 806 (1988)); *State v. Jim*, 156 Wn. App. 39, 41, 230 P.3d 1080 (2010), *aff'd*, 173 Wn.2d 672, 273 P.3d 434 (2012). Based on the municipal court's record, we review factual issues (such as the municipal court's findings of fact) for substantial evidence, and we review legal issues (such as the municipal court's conclusions of law) de novo.[2] *City of Bellevue v. Jacke*, 96 Wn. App. 209, 211, 978 P.2d 1116 (1999).

An officer may conduct an investigatory stop if the officer has a reasonable and articulable suspicion, based on specific objective facts, that the individual seized is involved in criminal activity. *State v. Day*, 161 Wn.2d 889, 896-97, 168 P.3d 1265 (2007). "A reasonable suspicion is the 'substantial possibility that criminal conduct has occurred or is about to occur.'" *State v. Lee*, 147 Wn. App. 912, 916, 199 P.3d 445 (2008) (quoting *State v. Kennedy*, 107 Wn.2d 1, 6, 726 P.2d 445 (1986)). It is the State's burden to establish the propriety of an investigative stop. *State v. Z.U.E.*, 178 Wn. App. 769, 780, 315 P.3d 1158 (2014), *aff'd*, 183 Wn.2d 610, 352 P.3d 796 (2015). "The focus is on what the officer knew at the time of the stop," and "[n]o subsequent events or circumstances can retroactively justify a stop." *Z.U.E.*, 178 Wn. App. at 780.

An informant's tip can provide police with a reasonable suspicion to make an investigatory stop if the tip is reliable. *State v. Sieler*, 95 Wn.2d 43, 47, 621 P.2d 1272 (1980). Although we may generally presume the reliability of a tip from a citizen informant, that presumption does not apply when the only information available to the responding officer is the informant's name and phone number. *State v. Hopkins*, 128 Wn. App. 855, 863-64, 117 P.3d 377 (2005). Without more

---

[2] The State appears to argue that Reyes is attempting to re-argue an issue that the superior court found in his favor and that he has misstated one of the superior court's findings. Because we review the municipal court's decision, the superior court's decision is irrelevant and we do not address these arguments. *See Jim*, 156 Wn. App. at 41.

than an informant's name and phone number, an officer may not detain the individual based on the informant's tip alone. *Hopkins*, 128 Wn. App. at 863-64 (quoting *Sieler*, 95 Wn.2d at 48); *see also Z.U.E.*, 178 Wn. App. at 783. Instead, the State must show that the totality of the circumstances demonstrate "(1) circumstances establishing the informant's reliability or (2) some corroborative observation, usually by the officers, that shows either (a) the presence of criminal activity or (b) that the informer's information was obtained in a reliable fashion." *Z.U.E.*, 183 Wn.2d at 618.

## II. CHALLENGED FINDINGS

Reyes argues that the municipal court erred in entering findings of fact and conclusions of law[3] stating that the 911 caller was a "known informant" or a "named informant" because the only information the 911 caller provided was his name. Br. of Appellant at 9. Although the record supports a finding that the 911 caller was "named," we agree that the municipal court erred when it determined that the 911 caller was a "known informant" at the time of the stop.

The municipal court found that

> [t]he known informant gave his name and address to 911 and Officer Maini was advised that the report was from a known informant. *It is unclear from the record whether Officer Maini knew the reporting party's actual name, address[,] or phone number or observed it on his patrol car computer before his stop of the defendant.*

CP at 9 (emphasis added). Neither Reyes nor the State challenges the italicized portion of this finding, thus it is a verity on appeal. *State v. O'Neill*, 148 Wn.2d 564, 571, 62 P.3d 489 (2003).

---

[3] Reyes does not specify which findings of fact and conclusions of law he is assigning error too, but he suggests that this alleged error is present in every one of the municipal court's findings and conclusions.

Officer Maini's testimony that the reporting party's name appeared on his computer-aided dispatch system when the dispatcher notified the officers on their radios arguably supports the finding that the 911 caller was a "named informant." But the record does not support the finding that the 911 caller was a "known informant."

In a suppression hearing, it is the State's burden to establish the stop was lawful. *Z.U.E.*, 178 Wn. App. at 780. By stating that it was "unclear from the record" whether Officer Maini knew the caller's name, address, or phone number, the municipal court essentially found that the State had failed to meet its burden of establishing that Officer Maini was aware of any of these facts when he contacted Reyes. CP at 9. Without proof that Officer Maini knew the 911 caller's actual name or any other potentially identifying information, it was error for the municipal court to find that the caller was a "known informant." *Hopkins*, 128 Wn. App. at 863-64.

### III. No Basis for Reasonable Suspicion

Reyes further argues that the municipal court erred in concluding that the stop was lawful because the 911 caller's information provided reasonable suspicion. We agree.

As noted above, our case law establishes that an officer may not detain an individual based on a citizen informant's tip if the only information relevant to the informant's reliability is the citizen informant's name and phone number. *Z.U.E.*, 178 Wn. App. at 783; *Hopkins*, 128 Wn. App. at 863-64 (quoting *Sieler*, 95 Wn.2d at 48). Here, the State failed to establish that at the time

of the stop Officer Maini knew more about the 911 caller than the name the caller had provided.[4]

Nor does the municipal court's findings show that any officer observed anything that could have corroborated the fact Reyes was driving while intoxicated or corroborated the 911 caller's reliability. "The absence of any information regarding the informant[ ] beyond basic identification precludes a finding of reliability." *Z.U.E.*, 178 Wn. App. at 784. Because there were no facts establishing the 911 caller's reliability, the officers could not rely solely on the information from the 911 call to establish reasonable suspicion. And because there were no additional facts that would have independently established the 911 caller's reliability or reasonable suspicion, the municipal court erred when it denied Reyes's motion to suppress.[5]

---

[4] The State appears to assert that the 911 caller's identification of the make, model, and color of the vehicle and the vehicle's license plate number was relevant to the caller's reliability. Essentially, the State is arguing that these facts corroborated the 911 caller's information. Although the caller's ability to describe Reyes's vehicle is relevant to the caller's accuracy, a mere description of the vehicle does not reflect on the caller's reliability because it does not reveal anything about the caller. *See State v. Saggers*, 182 Wn. App. 832, 840, 332 P.3d 1034 (2014) ("[C]onfirming a subject's description, location, or other innocuous facts generally does not satisfy the corroboration requirement.").

[5] The State alternatively appears to assert that the risk drunk driving creates justified the officers' quick response, regardless of whether the officers verified the 911 caller's reliability. Our Supreme Court has acknowledged this potential exception in *Z.U.E.* 183 Wn.2d at 623. The court commented that "under certain conditions, officers must be afforded some leeway; when a tip involves a serious crime or potential danger, less reliability may be required for a stop than is required in other circumstances" and acknowledged that drunk driving may be one circumstance where lenience is appropriate. *Z.U.E.*, 183 Wn.2d at 623. "Drunk drivers pose a threat to everyone on the road, and officers must be able to take action to prevent a potentially imminent accident." *Z.U.E.*, 183 Wn.2d at 624. But such lenience is not justified under the circumstances here because Reyes had already pulled his vehicle over at his home before the officers contacted him and no longer posed any immediate risk that he would cause an accident. Once Reyes stopped the car and the risk of harm was not as immediate, the officers had time to verify the 911 caller's reliability.

9

No. 47735-1-II

Thus, we reverse the municipal court order denying Reyes's motion to suppress and remand for further proceedings.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
JOHANSON, P.J.

We concur:

_____
LEE, J.

_____
SUTTON, J.

10