FILED
COURT OF APPEALS
DIVISION II

2014 OCT 10 AM 10: 00

WASHINGTON

BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 42777-0-II |
| Respondent, | |
| v. | |
| CHRISTINE KAY WESTVANG, | PUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — In the case of *State v. Ruem*, 179 Wn.2d 195, 313 P.3d 1156 (2013) our

Supreme Court held that *Ferrier*[1] warnings are not required when law enforcement officers seek

consent to enter a home to execute an arrest warrant. In light of this opinion, we reconsider our

May 21, 2013 decision reversing Christine Westvang's conviction for unlawful possession of a

controlled substance with intent to deliver and now affirm Westvang's conviction.

## FACTS

### I. SUBSTANTIVE FACTS

In 2011, officer Spencer Harris and detective Kevin Sawyer were attempting to locate a

fugitive, Scott Miller, who had an active warrant for his arrest. Detective Sawyer had received

an informant's tip that Miller was at Christine Westvang's home. Upon arrival at Westvang's

home, the officers informed her that they were looking for Miller; she responded that he was not

there. Detective Sawyer then asked Westvang's permission to enter the home to look for Miller

---

[1] *State v. Ferrier*, 136 Wn.2d 103, 960 P.2d 927 (1998).

and although Sawyer did not give Westvang the full *Ferrier* warnings, he informed Westvang that she did not have to consent to the search. Westvang consented to the search.

Westvang led the officers through her living room, kitchen, and bedroom, but they did not find Miller. Returning to the living room, the officers saw a desk upon which were substances the officers recognized as methamphetamine and marijuana, as well as small plastic baggies, a digital scale with a white crystal substance, and $105 in U.S. currency.

## II. PROCEDURAL FACTS AND *WESTVANG* I

The State charged Westvang with possession of a controlled substance with intent to deliver.[2] Westvang moved to suppress the evidence obtained from the search on the grounds that her consent was involuntary because, among other things, *Ferrier* warnings were not given. The trial court denied the motion. A jury found Westvang guilty as charged.

Westvang appealed, and on May 21, 2013, we issued a published opinion reversing her conviction. *State v. Westvang*, 174 Wn. App. 913, 931, 301 P.3d 64 (2013) (*Westvang* I). Relying on *State v. Williams*, 142 Wn.2d 17, 11 P.3d 714 (2000), we held that *Ferrier* warnings were required in this situation, because the law enforcement officers had neither corroborating evidence that Miller was at Westvang's home, nor prior experience with the informant such that they could reasonably rely on the accuracy of his tip. *Westvang* I, 174 Wn. App. at 928-29. Therefore, we reversed Westvang's conviction, holding that "officers are required to provide *Ferrier* warnings before obtaining consent to search a home for a person when, as here, the officers had no reasonable suspicion that the person could be found in the defendant's home." *Westvang* I, 174 Wn. App. at 918.

---

[2] RCW 69.50.401(1).

On February 5, 2014, our Supreme Court granted the State's petition for review of *Westvang* I, and directed us to reconsider our decision in light of its decision in *Ruem*. *State v. Westvang*, 179 Wn.2d 1014, 1014, 318 P.3d 280 (2014). On remand, Westvang argues only that the lack of *Ferrier* warnings vitiated any consent she gave to search her home.

ANALYSIS

Westvang argues that the police contact in this case was a "knock and talk"[3] necessitating *Ferrier* warnings, and that failure to give these warnings vitiated any consent she gave for the search. Because *Ferrier* warnings are not required when law enforcement officers request consent to execute an arrest warrant, we disagree.

### I. STANDARD OF REVIEW

Westvang does not challenge any of the trial court's findings of fact, so they are verities on appeal. *State v. Moore*, 161 Wn.2d 880, 884, 169 P.3d 469 (2007). We review *de novo* the trial court's conclusion that the search was valid. *Moore*, 161 Wn.2d at 885.

### II. *FERRIER* WARNINGS NOT REQUIRED

Article 1, section 7 of the Washington Constitution provides: "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." This provision gives greater protection than the federal constitution. *State v. Ortega*, 177 Wn. 2d 116, 122, 297 P.3d 57 (2013). Subject to very few exceptions, warrantless searches of homes are, per se, unreasonable under the Fourth Amendment to the United States Constitution and under article 1,

---

[3] As described by an officer testifying in *Ferrier*, a "knock and talk" is when "[y]ou go to the door, knock on the door, make contact with the resident, ask if you can come in to talk about whatever the complaint happens to be . . . . Once you're inside, you talk about why you're there and you ask for permission to search the premises." 136 Wn.2d at 107.

No. 42777-0-II

section 7 of the Washington Constitution. *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967); *State v. Khounvichai*, 149 Wn.2d 557, 562, 69 P.3d 862 (2003). Voluntary consent by the occupant, an exception to the prohibition against warrantless searches, allows officers to search homes without warrants, but the occupant has the right at all times to limit the scope and duration of the search. *Ferrier*, 136 Wn.2d at 118-19.

Our Supreme Court in *Ferrier* announced a rule to protect occupants who may not be aware of the right to refuse consent to a search or to limit its scope and duration. 136 Wn.2d at 118-19. The court held:

> [W]hen police officers conduct a knock and talk for the purpose of obtaining consent to search a home, and thereby avoid the necessity of obtaining a warrant, they must, prior to entering the home, inform the person from whom consent is sought that he or she may lawfully refuse to consent to the search and that they can revoke, at any time, the consent that they give, and can limit the scope of the consent to certain areas of the home. The failure to provide these warnings, prior to entering the home, vitiates any consent given thereafter.

*Ferrier*, 136 Wn.2d at 118-19.

In *Ruem*, our Supreme Court held that "*Ferrier* warnings are not required when law enforcement officers seek consent to enter a home to execute an arrest warrant." 179 Wn.2d at 210. Instead, *Ferrier* warnings are required only when law enforcement officers are conducting a "knock and talk": entering the home without a search warrant to search for contraband or evidence of a crime. *Ruem*, 179 Wn.2d at 206.

Here, the officers were not required to give Westvang *Ferrier* warnings because they were not requesting entry to her home to search for contraband or evidence of a crime pursuant to a "knock and talk." The officers obtained Westvang's consent to enter her home to execute an

4

arrest warrant. Therefore, under *Ruem,* no *Ferrier* warnings were required. *Ruem,* 179 Wn. 2d at 210.

Westvang argues that because the officers did not have a reasonable suspicion that Miller was at Westvang's home, the encounter was a "knock and talk" requiring *Ferrier* warnings. But under *Ruem,* our focus is on the subjective intent of the law enforcement officer. *See* 179 Wn. 2d at 206. Since the officers sought to enter the home to execute an arrest warrant, rather than to "circumvent the requirements of the search warrant process,"[4] this procedure was not a "knock and talk," and the objective amount of evidence that Miller was present is irrelevant.

Based on our Supreme Court's clear holding in *Ruem* that "*Ferrier* warnings apply when police conduct a 'knock and talk'" but "are not required when law enforcement officers seek consent to enter a home to execute an arrest warrant," we reconsider and reverse our decision in *Westvang* I, and affirm Westvang's conviction. *Ruem,* 179 Wn.2d at 206, 210.

_____
Worswick, J.

We concur:

_____
Maxa, J.

_____
Lee, J.

_____

[4] *Ruem,* 179 Wn.2d at 206.