FILED
COURT OF APPEALS
DIVISION II

2015 JUN -4 AM 8: 35

STATE OF WASHINGTON

BY_____
       DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 45400-9-II |
| Respondent, | |
| v. | |
| MAKSIM V. BURICH, | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, J. — Maksim V. Burich appeals his bench trial convictions for first degree burglary, second degree unlawful possession of a firearm, theft of a firearm, residential burglary, and second degree criminal trespass. He argues that the trial court erred in failing to suppress evidence obtained by a police officer during a *Terry*[1] investigative stop. He argues that the trial court erred in including Burich's race in Findings of Fact 2 and 3 as part of the facts upon which the court made its Conclusion of Law 1 (ruling that the officer's stop was justified based on a reasonable, articulable suspicion that Burich was involved in criminal activity). Because substantial evidence supports the trial court's findings of fact, and because those findings support

---

[1] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

the court's legal conclusion, we hold that the trial court did not err in failing to suppress evidence obtained as a result of the officer's *Terry* stop. We affirm.

FACTS

At approximately 2:24 AM on October 8, 2012, Martin Blackmer awoke to a stranger leaning through the sliding door of his residence. Blackmer yelled at the individual, who then ran out the door. Blackmer immediately called the police, and described the intruder to police dispatch as a "slender, white male, younger, with a light-colored hooded sweatshirt." 1 Verbatim Report of Proceedings (VRP) at 68.

Shortly afterwards, at approximately 3:00 AM, Katherine Evans awoke to her dog growling and a ticking sound coming from her backyard. Evans looked out her bedroom window and saw a stranger in her backyard next to the living room window. She made eye contact with the individual, whom she described to police dispatch as a "slender, white male with a light gray hoodie and light-colored pants." 1 VRP at 71. The individual ran from the house and Evans called the police.

Jason Dashnow returned from his shift on the night between October 7 and October 8 to find that his apartment had been burglarized. Dashnow called the police. Dashnow's apartment is located across the street from Blackmer's residence and 1.5 miles from Evans's residence.

Officer Jacob Stringfellow responded to the Blackmer residence call at 2:26 AM on October 8, 2012. Blackmer told Officer Stringfellow that he had fallen asleep on his couch watching television, and woke up to see a "slender, white male, younger, with a light-colored hooded sweatshirt or . . . hoodie" in his living room. 1 VRP at 68.

At approximately 3:05 AM, police dispatch notified Officer Patrick Gilbert of an attempted intrusion into Evans's residence. Dispatch described the intruder as "an unknown race male, possibly a teenager, wearing a light-colored hoodie and some jeans," and stated that the intruder fled in a westbound direction. 1 VRP at 11. Officer Gilbert drove one-half mile southwest of the reported burglary location and began looking for the intruder in an area known as "Saddle Creek." 1 VRP at 11, 16.

When Officer Gilbert arrived in Saddle Creek, at approximately 3:11 AM, there was no traffic in the area; he added white take-down lights and alley lights to his headlights to illuminate the scene. He drove between three and five miles per hour and, upon rounding a corner in his police vehicle at approximately 3:17 AM, he "saw a red car, lights completely off, headed directly towards [him], [with] a male inside of the car that matched the individual [he] was looking for." 1 VRP at 17. The red car was driving at less than five miles per hour. Officer Gilbert directed his spotlight into the car and observed a "white male, short, brown hair and he was wearing a light-colored hoodie." 1 VRP at 18. The driver "appeared to be youthful in appearance." 1 VRP at 18.

The car stopped approximately 30 feet from Officer Gilbert's patrol car; Officer Gilbert stepped outside his patrol car and ordered the driver to display his hands. Officer Gilbert asked for identification, which the driver was unable to provide. Officer Gilbert asked the driver to step from the vehicle, placed him in handcuffs, and told the driver that he was a burglary suspect. The driver identified himself as Maksim V. Burich. Burich told Officer Gilbert that his headlights were off because he was lost.

From outside the vehicle, Officer Gilbert observed a stereo unit on the front seat passenger floorboard and a .22 caliber rifle behind the driver's seat "sticking up . . . in plain view" on the rear passenger floorboard. 1 VRP at 27. Officer Gilbert performed a records check on Burich's name and learned that he was a convicted felon restricted from possessing firearms. Officer Gilbert then placed Burich under arrest and read him his *Miranda*[2] rights. Neither Officer Gilbert nor Officer Stringfellow questioned Burich after advising him of his *Miranda* rights. At approximately 3:42 AM, after Burich was placed in the patrol car, another police officer arrived on the scene with Katherine Evans. Evans positively identified Burich as the individual who was trying to enter her house.

On October 9, 2012, the State charged Burich with burglary in the first degree (Count I), unlawful possession of a firearm in the second degree (Count II), theft of a firearm (Count III), residential burglary (Count IV), and attempted residential burglary (Count V). On August 15, 2013, the case proceeded to a bench trial, which began with a CrR 3.5/3.6 hearing after which the trial court concluded that Burich's statements to police were admissible at trial. On September 6, 2013, the trial court found Burich guilty as to Counts I-IV; and guilty of the lesser included offense of "criminal trespass in the second degree" as to Count V. 7 VRP at 2-4; Clerk's Papers (CP) at 176.

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

The court entered the following findings of fact[3] related to the events leading up to the stop:

1. That on October 8, 2012, at 2:24 a.m. the Fife Police Department received a phone call from Martin Blackmer of an attempted residential burglary at his residence, which is a townhouse located at 6826 20th Street East in Fife, Washington.

2. That Mr. Blackmer had seen a young white male wearing a light grey hoodie and a light grey pants enter his residence through a sliding glass door.

3. That at 2:26 a.m. on October 8, 2012, Officer Jake Stringfellow of the Fife Police Department was dispatched to Mr. Blackmer's townhouse where the officer spoke to Mr. Blackmer and then conducted an area check, without success, for the suspect.

3. [*sic*] That on October 8, 2012, at approximately 3:00 a.m., Katherine Evans looked out her upstairs bedroom window and saw a young white male with short light brown hair wearing a light grey hoodie and jeans in her backyard next to the living room window. The living room window was below Mrs. Evans' bedroom window.

4. That Mrs. Evans' house is located at 6932 42nd Street Court East in Fife, Washington and is 1.5 miles from Mr. Blackmer's townhouse.

5. That at 3:05 a.m. on October 8, 2012, Officers Pat Gilbert and Stringfellow went to investigate the possible burglary at the Evans' residence.

6. That officers Gilbert and Stringfellow drove in the area near the Evans residence and conducted an area check for the suspect.

7. That at 3:17 a.m. on October 8, 2012, Officer Gilbert saw a red Mazda driving very slowly with the headlights off at 46th Street East and 67th Avenue East in Fife, Washington.

---

[3] The trial court mistakenly numbered Finding of Fact 3 twice; Burich does not challenge both Findings of Fact 3, only the second one summarizing Evans's description of Burich.

8. That Officer Gilbert was in a fully marked patrol car and had on his headlights, his alley lights and an overhead spotlight. Upon seeing the red Mazda, Officer Gilbert turned his side spotlight on and used it to highlight the inside of the car.

9. That the driver of the red Mazda was a young white male and he was the only occupant of the car.

10. That the defendant was the driver of the red Mazda and he was wearing a light grey hoodie.

CP at 189-90. On the basis of these findings, the court concluded, "That there were sufficient suspicious circumstances which supported reasonable suspicion to stop the defendant pursuant to a Terry or investigatory stop." CP at 194. Burich appealed.

## ANALYSIS

Burich assigns error to Findings of Fact (FF) 2 and 3 and Conclusion of Law (CL) 1 that Officer Gilbert's *Terry* stop was justified. But his brief addresses only the portion of the trial court's findings referring to Burich's race.[4] Burich argues that, "at the time of the stop, the only information the officer had from dispatch was that an 'unknown race' male, wearing a grey hoodie and jeans, had attempted to enter a nearby apartment." Br. of Appellant at 11. Based on this fact, he argues that (1) the trial court erred in its finding that the suspect was described as "a young white male," rather than as an "unknown race male," (2) the findings did not support the trial court's conclusion that Officer Gilbert had reasonable, articulable suspicion to justify a stop for a criminal investigation, and (3) the court should have suppressed evidence gathered from the *Terry*

---

[4] RAP 10.3(a)(6) requires appellant to support issues presented for review with argument, citations to legal authority, and references to relevant parts of the record.

6

stop.[5] We hold that substantial evidence supports the trial court's findings of fact, those findings support its conclusion that the *Terry* stop was justified, and the trial court did not error in failing to suppress evidence gathered from the stop.

We review the findings of fact to determine whether they are supported by substantial evidence. *State v. Dobbs*, 180 Wn.2d 1, 10, 320 P. 3d 705 (2014). "'Substantial evidence exists where there is a sufficient quantity of evidence in the record to persuade a fair-minded, rational person of the truth of the finding.'" *State v. Bonds*, 174 Wn. App. 553, 562, 299 P.3d 663, *review denied*, 178 Wn.2d 1011 (2013) (quoting *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994)). We review de novo conclusions of law following a suppression hearing. *State v. Bailey*, 154 Wn. App. 295, 299, 224 P.3d 852 (2010). A finding of reasonable suspicion presents a question of law that we review de novo. *State v. Lee*, 147 Wn. App. 912, 916, 199 P.3d 445 (2008). Unchallenged findings of fact are verities on appeal. *State v. Westvang*, 184 Wn. App. 1, 5, 335 P.3d 1024 (2014).

Article 1, section 7 of the Washington Constitution protects individuals "against unwarranted government intrusions into private affairs," such as unlawful searches and seizures. *State v. Doughty*, 170 Wn.2d 57, 61, 239 P.3d 573 (2010). "[W]arrantless seizures are per se unreasonable, and the State bears the burden of demonstrating that a warrantless seizure falls into

---

[5] Br. of Appellant at 11. Burich also argues that the State presented no evidence that he was cited for a traffic infraction. He presumably refers to the fact that he was driving at night with his headlights off. But he fails to cite authority or argue that the State was required to cite Burich for a traffic infraction even if the conduct (driving with his lights off) was a factor in the officer's decision to stop him.

a narrow exception to the rule." *Doughty*, 170 Wn.2d at 61. Such "exceptions are 'jealously and carefully drawn.'" *Id.* (quoting *State v. Williams*, 102 Wn.2d 733, 736, 689 P.2d 1065 (1984)).

One exception to the warrant requirement is an investigative stop of a vehicle, also known as a *Terry* stop. A valid *Terry* stop requires the police officer to "'point to specific and articulable facts which, taken together with rationale inferences from those facts, reasonably warrant that intrusion.'" *State v. Snapp*, 174 Wn.2d 177, 197, 275 P.3d 289 (2012) (quoting *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)); *see Doughty*, 170 Wn.2d at 62 ("[a] *Terry* stop requires a well-founded suspicion that the defendant engaged in criminal conduct"). "A reasonable, articulable suspicion means that there 'is a substantial possibility that criminal conduct has occurred or is about to occur.'" *Snapp*, 174 Wn.2d at 197-98 (quoting *State v. Kennedy*, 107 Wn.2d 1, 6, 726 P.2d 445 (1986)); *State v. Jardinez*, 184 Wn. App. 518, 524, 338 P.3d 292 (2014). The State bears the burden to show by clear and convincing evidence that the *Terry* stop was justified. *Doughty*, 170 Wn.2d at 62. "In reviewing the propriety of a *Terry* stop, a court evaluates the totality of the circumstances" presented to the officer at the time of the stop. *Snapp*, 174 Wn.2d at 198; *see Doughty*, 170 Wn.2d at 62.

Burich argues that, at the time of the stop, Officer Gilbert knew only that an "'unknown race' male, wearing a grey hoodie and jeans, had attempted to enter a nearby apartment," and that, consequently, Officer Gilbert's basis for the *Terry* stop was insufficient. Br. of Appellant at 11. At trial, Officer Gilbert stated that his reason for stopping Burich was: "I thought it was pretty weird, but I thought, [t]his is someone who doesn't want to be seen and is sneaking around the

8

neighborhood, and so I stopped him." 1 VRP at 60-61. Burich argues that, based on this statement, the stop was unlawful because the officer's suspicion did not relate to a particular crime; it was merely "a generalized suspicion that the person detained is 'up to no good.'" Br. of Appellant at 10 (quoting *State v. Bliss*, 153 Wn. App. 197, 204, 222 P.3d 107 (2009). But evidence in the record from Blackmer's, Evans's, and Officer Gilbert's testimonies[6] provides substantial evidence to support the trial court's findings of fact, and all three testified that Burich was a white male.

Burich does not challenge Findings of Fact 1 and 4-10 which we adopt as verities on appeal. *See Wilson & Son Ranch, LLC v. Hintz*, 162 Wn. App. 297, 305, 253 P.3d 470 (2011). The unchallenged findings describe Officer Gilbert's (1) knowledge of the location of the burglaries, (2) knowledge of the suspect's clothing, (3) observations of the suspect and the suspect's clothing, (4) observations of the vehicle and the time, place, and manner in which Burich drove the vehicle,

---

[6] Officer Gilbert testified that, at the time of the stop, approximately 3:17 AM, Burich was driving the vehicle slowly, with its lights off, in the vicinity of the recent burglaries. He testified that the driver, Burich, was "a white male, short, brown hair and he was wearing a light-colored hoodie. . . . He appeared to be youthful in appearance." 1 VRP at 18.

Blackmer testified to the burglary and his description of the suspect, whom he "observed to be a white Caucasian male between the early 20s to mid 20s, gray hooded sweatshirt." 4 VRP at 4. He stated that he was sleeping in his living room when he awoke to a "loud sound" and saw the individual "three-quarters of the way in through [the] sliding glass door." 5 VRP at 58.

Evans also testified to the incident and the suspect's description, stating that she "saw a young guy, short hair . . . light-colored baggy pants and a gray hoodie. . . . Caucasian" at her back window. 5 VRP at 34. She testified that her window "screen had been removed from the window." 5 VRP at 37. She also testified that she subsequently identified the person stopped by police as the individual at her window.

and (5) the location's proximity to the recent burglaries. On the basis of these unchallenged findings alone, we would find that sufficient evidence supports the trial court's conclusion of law that the officer was justified in stopping Burich. *State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009).

Burich also assigns error to the trial court's Conclusion of Law 1, which provides, "That there were sufficient suspicious circumstances which supported reasonable suspicion to stop the defendant pursuant to a Terry or investigatory stop." CP at 194 (CL 1). The State responds that the trial court's Findings of Fact 1-3, 7, 9, and 10 support its conclusion of law that Officer Gilbert had sufficient justification to stop Burich.

In examining the totality of circumstances facing Officer Gilbert, we hold that the facts here provided sufficient individualized suspicion that Burich had just been involved in the burglaries that the officer knew to have taken place nearby.[7] *See Lee*, 147 Wn. App. at 916-17. These are "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant[ed] the intrusion." *Bliss*, 153 Wn. App. at 204.

We hold that substantial evidence supports Findings of Fact 2 and 3 and that the trial court's findings of fact support its legal conclusion that Officer Gilbert was justified in stopping Burich.

---

[7] In its written order following the CrR 3.5/3.6 hearing, the trial court entered numerous findings of fact, all of which are either verities or supported by substantial evidence. We look at the entirety of the trial court's factual findings to determine whether they support the trial court's legal conclusion that the *Terry* stop was justified.

No. 45400-9-II

Accordingly, we hold that the trial court did not err in failing to suppress evidence obtained as a result of the officer's *Terry* stop. We affirm Burich's convictions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

BJORGEN, A.C.J.

WORSWICK, J.

11