FILED
COURT OF APPEALS
DIVISION II

2015 JUL 28 AM 8: 26

STATE OF WASHINGTON
BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 46383-1-II |
| Respondent. | |
| v. | |
| SEBASTIAN J. HALLER, | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, J. — Sebastian Haller appeals his conviction for heroin possession arguing that the trial court erred in denying his CrR 3.6 motion to suppress evidence discovered in his bedroom during a search of his residence. The State concedes that the evidence should have been suppressed. Br. of Resp't at 1. We accept the concession.[1] Pursuant to RAP 18.14(a)[2] and 18.14(e)(2)[3], we reverse Haller's heroin possession conviction and remand to the trial court to dismiss the State's charge.

---

[1] This matter was initially considered by a commissioner of this court pursuant to RAP 18.14 and subsequently referred to a panel of judges.

[2] RAP 18.14(a) provides that "[t]he appellate court may, on its own motion or on motion of a party, affirm or reverse a decision or any part thereof on the merits in accordance with the procedures defined in this rule."

[3] RAP 18.14(e)(2) provides as follows:
> A motion on the merits to reverse will be granted in whole or in part if the appeal or any part thereof is determined to be clearly with merit. In making these determinations, the judge or commissioner will consider all relevant factors including whether the issues on review (a) are clearly controlled by settled law, (b) are factual and clearly not supported by the evidence, or (c) are matters of judicial discretion and the decision was clearly an abuse of discretion.

FACTS

At the time of the contested search, Haller was serving a 12-month community custody term supervised by Community Corrections Officer (CCO) Gary Kilmer. As a condition of his community custody, Haller's home was "subject to search to ensure his compliance with probation." Clerk's Papers (CP) at 17 (Finding of Fact (FF) 1.2).

Officer Adam Haggerty informed Kilmer that he had received unspecified "reports" or "tips" from an informant that Haller was dealing drugs from his residence. Verbatim Report of Proceedings (VRP) (1/15/14) at 11, 38. A few days later, Kilmer went to Haller's residence as part of his regular supervision schedule with Officers Lowrey and Haggerty as backup. Kilmer informed Haller that he "needed to check" Haller's bedroom. VRP (1/15/14) at 12. Haller said that a man and a woman were in the bedroom getting dressed and he provided the name of the woman.

About three minutes later, a couple emerged from the bedroom; they were later identified as Cassie Christensen and Robert Lusk. Christensen carried a backpack and a purse. After Christensen and Lusk gave the officers a false name as to Lusk, the officers arrested them for providing false information. The officers began to search the backpack Christensen had been carrying, at which point the couple informed the officers that the backpack belonged to Haller.

While Officers Lowrey and Haggerty questioned Lusk and Christensen, Kilmer searched Haller's bedroom and observed syringes, marijuana, and other items that "appeared to be something you would use for drugs." VRP (1/15/14) at 16. After summoning Kilmer back to the living room, the officers informed Kilmer that Christensen and Lusk reported that the backpack belonged to Haller, and Kilmer searched the backpack. Inside, Kilmer found a scale with brown

residue, a methamphetamine pipe with residue, and small baggies. Kilmer arrested Haller for possession of drug paraphernalia.

While Kilmer arrested Haller, Officer Haggerty phoned the Honorable James Buzzard to request a warrant to search and seize the backpack and further search Haller's bedroom. The requested warrant was based upon what Kilmer observed in the initial search of the bedroom and the objects found in the backpack. Judge Buzzard authorized a search warrant as Haggerty requested. Pursuant to the warrant, the officers again searched the backpack and Haller's bedroom. In the bedroom, Officer Lowrey found heroin, hypodermic needles, metal melting pots, and scales with tar residue.

The State amended the information as to Haller, charging him with 1 count of procession of a controlled substance (heroin). Pursuant to CrR 3.6, Haller moved to suppress all of the evidence obtained through the illegal search of his home. The trial court denied Haller's motion, concluding, "CCO Kilmer had authority to search [Haller's] residence and belongings due to [his] status as a parolee on DOC supervision." CP at 21 (FF 2.1). Haller appeals.[4]

## ANALYSIS

Haller argues that the trial court erred in denying his motion to suppress evidence because Kilmer did not have reasonable cause to believe he had violated a condition of his community custody. Haller contends that Kilmer relied solely on anonymous tips that Haller was engaged in drug-related activity to justify searching Haller's bedroom. The State concedes that the

---

[4] Haller assigns error to the trial court's denial of his CrR 3.6 motion and also assigns error to findings of fact 1.2 and 1.7 and conclusions of law 2.4, 2.5, 2.6, 2.7, 2.8, and 2.9. However, because the State concedes that evidence discovered during the search of his residence was improperly admitted, we do not address his assignments of error beyond the trial court's denial of his motion.

information relayed by Haggerty to Kilmer was insufficient to provide Kilmer with reasonable cause to search Haller's bedroom. We accept the State's concession.

The United States Constitution guarantees that individuals will remain secure in their person and home from unreasonable searches and seizures. U.S. CONST. amend. IV. Washington's constitution states that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." WASH. CONST. art. I, § 7. It is well-established that a warrantless search is presumptively unreasonable unless the search falls under one of the exceptions to the warrant requirement. *State v. Westvang*, 184 Wn. App. 1, 5-6, 335 P.3d 1024 (2014). In the event that the State cannot demonstrate that the search was lawful, the "fruit of the poisonous tree" doctrine applies. *State v. Allen*, 138 Wn. App. 463, 469, 157 P.3d 893 (2007). "'When an unconstitutional search or seizure occurs, all subsequently uncovered evidence becomes fruit of the poisonous tree and must be suppressed.'" *Allen*, 138 Wn. App. at 469 (quoting *State v. Ladson*, 138 Wn.2d 343, 359, 979 P.2d 833 (1999)).

Law enforcement may search a parolee's home without a warrant as a condition of community custody supervision under RCW 9.94A.631(1). A parolee has a reduced expectation of privacy due to the State's interest in supervising the parolee. *State v. Jardinez*, 184 Wn. App. 518, 523, 338 P.3d 292 (2014). When searching a parolee's home, however, law enforcement must possess "*reasonable cause to believe* that an offender has violated a condition or requirement

of the sentence." RCW 9.94A.631(1) (emphasis added). The court has construed "reasonable cause" to require that law enforcement have a "'well-founded suspicion that a violation has occurred.'" *Jardinez*, 184 Wn. App. at 524 (quoting *State v. Massey,* 81 Wn. App. 198, 200, 913 P.2d 424 (1996)). We analogize the "reasonable cause" standard to the "reasonable suspicion" requirement. *Jardinez*, 184 Wn. App. at 524.

"'Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability.'" *State v. Lee*, 147 Wn. App. 912, 917, 199 P.3d 445 (2008) (quoting *State v. Randall,* 73 Wn. App. 225, 229, 868 P.2d 207 (1994)). An informant's tip may generate the requisite level of suspicion to justify the search of a parolee's home, but certain safeguards must be observed. *State v. Lyons*, 174 Wn.2d 354, 359, 275 P.3d 314 (2012). The informant's tip must carry some indicia of reliability when assessed under the totality of the circumstances. *State v. Z.U.E.,* No. 89894-4, Slip Op. at 8 (Wash. S. Ct. July 16, 2015). Specifically, the State must demonstrate that there are "(1) circumstances establishing the informant's reliability or (2) some corroborative observation, usually by the officers, that shows either (a) the presence of criminal activity or (b) that the informer's information was obtained in a reliable fashion." *Z.U.E.,* Slip Op. at 8.

Here, the State concedes that Officer Haggerty's testimony at the CrR 3.6 hearing, that he heard "reports" that Haller was dealing drugs from his residence, does not establish "reasonable cause" to believe that Haller violated his community custody provision. Br. of Resp't at 5. The record lacks any testimony "regarding the indicia of reliability of Officer Haggerty's source(s)." Br. of Resp't at 5. Specifically, Haggerty presented no evidence to establish the informant's reliability, nor was he able to offer any corroborative observations. Instead, the tips were

anonymous and consisted of conclusory assertions that Haller was dealing drugs. Thus, the State concedes that "all evidence recovered is the fruit of the poisonous tree and must be suppressed." Br. of Resp't at 6. We agree.

Kilmer's initial search of Haller's bedroom was unlawful because it was not based upon a "reasonable cause" to believe that Haller violated a term of his community custody. Therefore, the drugs and drug paraphernalia that Kilmer obtained while at Haller's home must be suppressed. The search of the backpack that Christensen carried also was tainted because that search flowed from Kilmer's unlawful search of Haller's bedroom. Had Kilmer not attempted to search the bedroom, Christensen and Lusk would not have come out of the room with the backpack, and Kilmer would not have searched the backpack and found contraband in it. Moreover, the observations Kilmer made in Haller's bedroom flowed from the initial unlawful search of the bedroom. Kilmer's search and seizure of Christensen and Lusk, and the drugs and paraphernalia Kilmer found in Haller's bedroom, also formed the basis for Kilmer's request for the search warrant that was not based on reasonable cause. Because the initial search of Haller's bedroom was unlawful, all subsequently uncovered evidence must be suppressed.

No. 46383-1-II

We reverse Haller's heroin possession conviction and remand for the trial court to dismiss the charge.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
SUTTON, J.

We concur:

_____
BJORGEN, A.C.J.

_____
MELNICK, J.